# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2045-20
A-2087-20

STATE OF NEW JERSEY,

      Plaintiff-Respondent/
      Plaintiff-Appellant,

v.

KEVIN J. MICUCCI,

      Defendant-Appellant/
      Defendant-Respondent.

_____

Argued (A-2045-20) and Submitted (A-2087-20)
October 20, 2021 – Decided November 23, 2021

Before Judges Hoffman, Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Indictment No. 19-08-0276.

Thomas S. Ferguson argued the cause for Kevin J. Micucci as appellant in A-2045-20 and as respondent in A-2087-20.

Naya A. Tsang, Assistant Prosecutor, argued the cause for the State of New Jersey as respondent in A-2045-20 and as appellant in A-2087-20 (James L. Pfeiffer,

Warren County Prosecutor, attorney; Dit Mosco, Assistant Prosecutor, of counsel and on the briefs).

PER CURIAM

The State appeals the trial court's order dismissing without prejudice the indictment charging defendant with sexual abuse of his girlfriend's eight-year-old daughter (the child). Defendant also appeals that order, contending the indictment should have been dismissed with prejudice.[1] We calendared the appeals back-to-back and now consolidate them for the purpose of issuing a single opinion.

The prosecution alleges that on multiple occasions, defendant caused the child to touch him inappropriately while they were alone before he took her to school. The child was unable to specify the dates on which the sexual abuse occurred, or when the recurring sexual abuse began or ended. Both appeals focus on the specificity of the relevant time frame. The indictment alleges that the sexual abuse occurred "on or about between the dates of September 4, 2018 and May 3, 2019." September 4, 2018, is the first day of the school year in which the child attended second grade (the 2018-2019 school year). May 3,

---

[1] Both parties moved for reconsideration of the trial court's order to dismiss the indictment without prejudice. The trial court denied both reconsideration motions, rendering a written opinion, whereupon both parties filed separate appeals.

A-2045-20

2019, is the day the child first reported the sexual abuse to her grandmother. That day falls within the 2018-2019 school year.

Defendant moved to dismiss the indictment with prejudice, arguing that it failed to provide adequate notice as to the time frame of the alleged sexual abuse. He also argued that the prosecutor committed misconduct in presenting the case to the grand jury by (1) failing to introduce one of the two videorecorded interviews of the child, and (2) eliciting testimony from the lead detective that misled the grand jury by mischaracterizing and overstating the specificity of the child's statements as to when the alleged sexual abuse occurred.

The trial court rejected defendant's due process argument that the indictment failed to provide adequate notice. The court determined, however, that the assistant prosecutor presenting the matter to the grand jury intentionally misled the grand jury with respect to statements the child made during two interviews conducted by a Warren County Prosecutor's Office detective. The trial court found that during the grand jury presentation, the assistant prosecutor posed confusing questions to the detective that were designed to make it appear that the child had provided a definitive and specific time frame as to when the sexual abuse occurred. The court also found that the assistant prosecutor compounded the false impression created by the detective's testimony by

 A-2045-20

choosing not to present a videorecording of the second interview of the child. The trial court reasoned that viewing the second recording would have shown the grand jury the child's inability to provide detailed information about when the recurring sexual abuse started and ended. The trial court concluded that these two decisions—to pose misleading questions to the detective on the witness stand and to omit the recording of the second interview from the evidence presented to the jury—together amounted to prosecutorial misconduct. The court concluded this misconduct infringed upon the grand jury's decision-making function and warranted dismissal of the indictment without prejudice, thereby requiring the State to re-present the case to another grand jury.

After carefully reviewing the record in light of the arguments of the parties and the governing principles of law, we reverse and vacate the trial court's decision to dismiss the indictment. Although the court issued a commendably thorough written opinion, it did not view the evidence presented to the grand jury in the light most favorable to the State. The child consistently stated that the criminal sexual contact incidents happened repeatedly after her mother left the house with the other children and before defendant took her to school. That testimony supported an inference that the unlawful acts occurred on school days. While the child repeatedly told the detective the alleged sexual abuse began

4

sometime before the start of the 2018-2019 school year, her statements do not indicate that the ongoing and repetitive alleged sexual misconduct did not continue during that school year.

During the second interview, moreover, the detective asked the child: "But it happened during this school year [referring to the ongoing 2018-2019 school year]?" The child answered: "Yeah and I think it's probe [sic] uh I'm pretty sure it was more than that." This answer provides an adequate foundation upon which the detective could testify that the child stated that inappropriate touching occurred during the 2018-2019 school year. Although other answers the child gave in both the first and second interviews do not specifically link the recurring sexual abuse to that particular school year, she at no time stated definitively that acts constituting sexual abuse did not occur during the 2018-2019 school year.

In these circumstances, we do not believe the indictment was palpably deficient in narrowing the time frame of the alleged criminal acts. Because we hold that there was no basis upon which to dismiss the indictment without prejudice, we necessarily reject defendant's contention that the indictment should have been dismissed with prejudice.

I.

We briefly summarize the pertinent facts and procedural history. On May 3, 2019, the child and her younger sister were playing after school while their maternal grandmother babysat. The grandmother overheard the two girls talking about "rubbing daddy's leg." The grandmother asked the child to repeat what she had said. The child revealed that defendant had been causing her to "rub his legs" and "touch his 'thing'" when she was alone with him in the morning before school. The grandmother apprised the child's mother when she arrived home. The mother and the child's biological father immediately took the child to the police station to make a report. Interviews were scheduled for the following Monday, May 6, 2019. On that date, a Warren County Prosecutor's Office detective interviewed the child, her mother, the grandmother, and the younger sister.

During the May 6 interview (first interview), which was electronically recorded and presented to the grand jury, the child was unable to recall the dates when the alleged sexual abuse began and ended. She was, however, consistent in stating that the incidents happened on school days during the time between when her mother left the house with the other children and when defendant took her to school.

A-2045-20

On May 9, 2019, the detective conducted a second recorded interview of the child (second interview or follow-up interview) in an attempt to narrow the time frame during which the alleged sexual abuse occurred. Although the child was once again clear about the specific time of day of the alleged acts of sexual abuse, she was unable to remember anything that linked a particular incident of sexual contact to a specific calendar event.[2] The child again was unable to specify when the alleged sexual abuse began or ended. However, as we have noted, the child affirmatively responded to the detective's question pertaining to whether the sexual abuse "happened during this school year."[3]

---

[2] During the second interview, the detective attempted to narrow the timeline of the abuse by asking the child if she remembered whether any of the incidents happened: 1) during that school year; 2) between September and May; 3) in the summer; 4) around the child's sister's birthday in April; 5) while the child was eight years old; and 6) since the child had turned eight years old in January. The detective's questions were unsuccessful in narrowing the relevant timeline. We note that, although the child could not tie any particular sexual contact incident to an event or a specific date, she did link all the alleged acts of sexual abuse to her school morning routine.

[3] During the second interview, the following exchange occurred:

Detective: Was all right so we talked about um this happening during this school year
Child: Mmhmm
Detective: You said it might have been a little longer maybe in the summer
Child: It might have been a lot longer a little bit longer

On May 9, 2019, defendant was arrested at his workplace and charged by complaint with two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(b) and one count of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-a(1).

The matter was presented to the grand jury on August 19, 2019. The State presented only one live witness: the Warren County Prosecutor's Office detective who was the lead investigator and who had conducted both interviews of the child. The State also introduced into evidence the May 6, 2019, videorecorded interview of the child. Although the grand jury was informed that a second interview had been conducted, jurors were not shown the videorecording of the May 9, 2019, follow-up interview. The grand jurors posed no questions about the second interview and did not request the prosecutor to play the recording for them.

During the grand jury presentation, the following exchange occurred between the assistant prosecutor and detective:

> Prosecutor: Did you learn as part of the investigation what grade the victim…was in?
>
> Detective: When I interviewed her she was in the [second] grade.
>
> Prosecutor: Okay. So she was in her second grade school year, from September 2018 to May [3], 2019?

Detective:  Correct

Prosecutor:  Okay.  And she indicated in her interview with you that this [referring to sexual acts] had been going on during that school year, correct?"

Detective:  Correct.

The grand jury returned a three-count indictment charging defendant with two counts of sexual assault of a child less than thirteen years of age, N.J.S.A. 2C:14-2(b), and one count of endangering the welfare of a child, N.J.S.A. 2C:24-4a(1).  All three counts were alleged to have occurred "on or about between the dates of September 4, 2018 and May 3, 2019."

Defendant filed a motion to dismiss the indictment with prejudice.  He argued that the time frame presented by the prosecution afforded inadequate notice to allow him to prepare a defense, and thus violated his due process rights.  He also argued that the prosecutor committed misconduct by failing to play the recording of the second interview to the grand jury.  Defendant further asserted that the child's inability to specify the start and end dates of the alleged sexual abuse was clearly exculpatory.  He also argued that the confusing questions the assistant prosecutor posed to the detective misled the grand jury into believing that the child said the abuse happened during her second-grade school year when in fact, according to defendant, she made no such definitive statement.

A-2045-20

On January 6, 2021, the trial court heard oral argument on defendant's motion to dismiss after which the court rendered a ruling on the record. The trial court concluded, "It is clear to the [c]ourt that the State lacks any form of a definitive timeline as it relates to the alleged offenses." The trial court nonetheless recognized that "[such lack of a definitive timeline] by itself is not sufficient to dismiss an indictment."

While acknowledging that leading questions are permitted in the grand jury, the trial court found that the questions posed by the assistant prosecutor to the detective were "clearly…intentionally confusing" and that the detective's simple affirmative answers were misleading in suggesting that the child had specified that sexual contact incidents occurred within the 2018-2019 school year.

Specifically, the court explained,

> By asking questions in this manner… the Grand Jury was intentionally misled, rendering the Indictment palpably defective due to the misleading nature of the questions and subsequent answers. The Victim only ever indicated that the alleged offenses occurred in the morning before school from which perhaps an inference could be drawn that it happened during a school year, however, she could not say it was during the current schoolyear, or a prior school year, and she never said that it happened during this second grade school year as was presented to the Grand Jury by way of the Detective's 'Yes' answer.

A-2045-20

The court also questioned the prosecutor's decision not to play the recording of the second interview to the grand jury and the motive for that decision. The court noted that while it "is the State's right to decide which evidence to present[,]" they "also have a duty to present clearly exculpatory evidence that directly negates an element of the crime." The court did not find, however, that the statements the child made at the second interview were clearly exculpatory. Rather, the court remarked that the second interview was "borderline exculpatory."[4] The trial court also found that the second interview was "full of contradictory responses by the Victim, with no single statement indicating that the alleged abuse occurred during the school year that started in September 2018. If any conclusions could be drawn, it [was] that the Victim was uncertain when the alleged abuse began, when it ended, or when it occurred last."

The court concluded:

> the State chose to bolster its argument for an indictment using an interview of the Victim, while choosing not to show the recording to the Grand Jury based only upon the testimony of [the detective]. A recording, that if nothing else, raises questions and contradictions which very possibly could have swayed the Grand Jury to

---

[4] As we have already noted on multiple occasions, it was during the second interview that the child made what we refer to as the "yeah" response, indicating to the detective that the sexual abuse "happened during this school year."

decide not to indict based upon the contradictory statements and the overall lack of timeline. While these statements in the second interview may not directly negate an element of a crime, [they are] at the very least borderline exculpatory based on their very nature. The [c]ourt finds that by suggesting to the Grand Jury by the Detective's testimony that the interview, which the State chose not to show, clarified the statement of the Victim from the first interview, which it clearly did not, is intentionally misleading and therefore, necessitates the granting of the Defendant's Motion to Dismiss the Indictment. The [c]ourt finds that by the State attempting to walk a fine line in its presentation to the Grand Jury they intentionally misled the Grand Jury and usurped their decision-making authority.

The court thereupon granted defendant's motion to dismiss the indictment but did so without prejudice.

Both defendant and the State filed motions for reconsideration. The court denied both motions on February 23, 2021,[5] rendering a lengthy written opinion. The written opinion repeats and amplifies the same reasoning as the court had stated in its oral ruling.

With respect to the State's argument regarding when the alleged sexual abuse occurred, the trial court in its written opinion noted:

---

[5] The court initially issued its order denying the State's motion for reconsideration on February 23, 2021. The caption of that order failed to indicate that the court also was denying defendant's motion for reconsideration. A corrected order was issued on March 29, 2021.

> This matter was presented to the Grand Jury and, despite the inability of the Victim to give a direct and definitive answer stating that the alleged abuse occurred during her second-grade school year, [the detective] affirmed to the Grand Jury that the Victim stated that the incidents occurred during [her second grade] school year. Thus, the [c]ourt finds that the State has failed to demonstrate that this [c]ourt based its opinion upon a palpably incorrect or irrational basis, or a failure to consider or appreciate the significance of the probative, competent evidence.

The court's written opinion also addressed defendant's motion for reconsideration. Defendant "assert[ed] that there was no fair notice given by the State of the time period in which the alleged offense occurred." Citing State in the Interest of K.A.W., 104 N.J. 112 (1986), defendant argued "that the transcripts failed to establish or prove which dates the alleged sexual abuse occurred with any specificity."

The trial court rejected defendant's argument:

> The Defendant conflates the inability to prove the specific instances with failing to give the Defendant fair notice of the timeframe of the accusation. [Ibid.] (remanding the case to proceed within the fair notice standard where the State could charge, "'four or five occurrences' within a 20-month period."). The [c]ourt, in discussing the Indictment and denying the motion for reconsideration before it, refrains from ruling on the fair notice issue raised by Defendant because it is moot.

A-2045-20

II.

Our review of the dismissal of an indictment is guided by well-established

legal principles. In <u>State v. Campione</u>, 462 N.J. Super. 466 (App Div. 2020),

we recently summarized those principles, explaining:

> An indictment is presumed valid and should only be dismissed if it is manifestly deficient or palpably defective. A motion to dismiss is addressed to the discretion of the trial court and that discretion should not be exercised except for the clearest and plainest ground.
>
> At the grand jury stage, the State is not required to present enough evidence to sustain a conviction. As long as the State presents some evidence establishing each element of the crime to make out a prima facie case, a trial court should not dismiss an indictment. In a nutshell, a court examining a grand jury record should determine whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it.
>
> [<u>Id.</u> at 492 (citing <u>State v. Feliciano</u>, 224 N.J. 351, 380– 81 (2016)).]

Our Supreme Court has also provided instruction on when an indictment

may be dismissed based on prosecutorial misconduct. In <u>State v. Murphy</u>, the

Court stressed, "An indictment should be dismissed only on 'the clearest and

plainest ground.'" 110 N.J. 20, 35 (1988) (quoting <u>State v. N.J. Trade Waste</u>

Ass'n, 96 N.J. 8, 18 (1984)). The Court added, "'Unless the prosecutor's misconduct . . . is extreme and clearly infringes upon the [grand] jury's decision-making function, it should not be utilized . . . to dismiss[] an indictment.'" Ibid. (alterations in original) (quoting State v. Schamberg, 146 N.J. Super. 559, 564 (App. Div. 1977)).

That standard is consistent with the notion that dismissal of an indictment is an extraordinary remedy. See State v. Williams, 441 N.J. Super. 266, 271-72 (App. Div. 2015). "[A]n indictment should not be dismissed unless the prosecutor's error was clearly capable of producing an unjust result. This standard can be satisfied by showing that the grand jury would have reached a different result but for the prosecutor's error." State v. Majewski, 450 N.J. Super. 353, 365-66 (App. Div. 2017) (citing State v. Hogan, 336 N.J. Super. 319, 344 (App. Div. 2001)).

We add that the prosecution "may not deceive the grand jury or present its evidence in a way that is tantamount to telling the grand jury a 'half-truth.'" State v. Hogan, 144 N.J. 216, 236 (1996). The Court in Hogan explained, "the grand jury cannot be denied access to evidence that is credible, material, and so clearly exculpatory as to induce a rational grand juror to conclude that the State has not made out a prima facie case against the accused." Ibid. The grand jury thus

15

must be presented with evidence whose absence would cause "a distorted version of the facts… and interfere[] with the grand jury's decision-making function." Ibid. (internal citations omitted). This standard, however, "is intended to be applied only in the exceptional case in which a prosecutor's file includes not only evidence of guilt but also evidence negating guilt that is genuinely exculpatory." Id. at 237. "Moreover, courts should dismiss indictments on this ground only after giving due regard to the prosecutor's own evaluation of whether the evidence in question is 'clearly exculpatory.'" Id. at 238. "The prosecutor's duty [to present exculpatory evidence] arises only if the evidence satisfies two requirements: it must directly negate guilt and must also be clearly exculpatory." Id. at 237.

## III.

We next apply these general principles to the present case. At the risk of undue repetition, we reiterate that the record shows that at one point during the second interview, the child expressly—albeit cursorily—acknowledged that sexual abuse occurred during the 2018-2019 school year. We repeat verbatim that critical exchange during the second interview:

> Detective: But it [referring to the alleged sexual contact] happened during this school year?

Child: Yeah and I think it's probe [sic] uh I'm pretty sure it was more than that.

We interpret "yeah" as an affirmative response to the detective's question. There is no doubt that the detective's reference to "this school year" means the school year that was ongoing at the time of the interview, that is, the 2018-2019 school year. And while the child added that "I'm pretty sure it was more than that," indicating the sexual abuse occurred before the then-current school year, the clear implication is that the abuse occurred <u>both</u> before and during the 2018-2019 school year.

It is true, as the trial court emphasized, this was the only time during either interview that the child indicated the abuse continued into the 2018-2019 school year. She never repeated this affirmative response with respect to a particular school year. Nor did she rescind it, expressly or implicitly. Her brief but unambiguous "yeah" response provides a foundation upon which to support the detective's grand jury testimony that the child had stated that sexual abuse occurred at some time during the course of that school year. That testimony, viewed in the light most favorable to the State, <u>see</u> <u>Campione</u>, 462 N.J. Super. at 492, provides an adequate evidential basis for the time frame specified in the indictment.

We do not disagree with the trial court's finding that throughout both interviews, the child was confused and thought the detective was asking about when the sexual abuse first began. Her other responses in that sense could fairly be characterized as inconsistent with the "yeah" response in that they did not directly and expressly state that acts of sexual contact occurred during the 2018-2019 school year. We do not agree, however, that the child ever "contradicted" her "yeah" response. The interview transcripts make clear that the child could not recall in either interview when the sexual abuse started or ended. But she never definitively stated that no act of sexual abuse occurred during the 2018-2019 school year. She never stated, for example, that the abuse stopped before the start of that school year. Indeed, she never indicated when the alleged sexual abuse last occurred.

We do not dispute that the child's apparent confusion, inability to recall details about the time frame, and repeated equivocations, undermine confidence in her recollection as to the timing of events. Her uncertainty and confusion expressed during both interviews will no doubt be highlighted at trial and closely scrutinized during cross-examination. But the prosecution was not required to present the grand jury with enough evidence to sustain a conviction. See

Feliciano, 224 N.J. at 380-81 (noting "some evidence establishing each element of the crime" is sufficient to protect an indictment from dismissal).

That conclusion does not end our review of the grand jury presentation. By all accounts, the compound leading questions the assistant prosecutor posed to the detective were confusing. We must decide whether those questions were intentionally designed to mislead the jury as to what the child stated during her interviews, and whether any such misconduct was sufficiently extreme as to infringe upon the grand jury's decision-making function and thus warrant dismissal of the indictment. See Murphy, 110 N.J. at 35.

We note that while the recording of the second video was not played, the jury was aware that there had been a second interview. They were told, moreover, that the follow-up interview was conducted for the purpose of clarifying the timeline. See note 2, supra. We focus on the following exchange during the grand jury presentation:

> Prosecutor: And was that [second interview] for the purpose to – clarify a timeframe with regards to [the child's] disclosure?"
>
> Detective: Yes.
>
> …
>
> Prosecutor: And that — again that timeframe that you discussed with her in the second interview was that it occurred during her

school year that started in September of 2018 and she was still in the school year it was that 2nd grade, correct?

Detective: Yes

The trial court found this testimony to be misleading, asserting that at no point did the child "definitively affirm that the alleged abuse occurred during her second-grade school year." Rather, the trial court stressed that she repeated the alleged abuse began sometime <u>before</u> the 2018-2019 school year. We disagree that the child had not sufficiently affirmed that the sexual abuse also occurred during the school year while she was in second grade.

We acknowledge that the grand jurors had the benefit of watching the recording of the first interview and could decide for themselves whether and to what extent the child equivocated as to the timeline of the abuse. The grand jury did not have the same opportunity with respect to the second interview.[6]

The trial court acknowledged that nothing in that follow-up interview was clearly exculpatory within the meaning of the rule announced in <u>Hogan</u>, 144 N.J. at 237. As the trial court correctly noted, the second interview did not negate an element of the crime. The court characterized the video as being "borderline

---

[6] We note again that the grand jury had the opportunity to ask questions pertaining to the second interview, or to request that it be played, but did not do so.

exculpatory." We certainly agree the recording of the second interview was not clearly exculpatory and thus need not have been presented to the grand jury. See Hogan, 144 N.J. at 237. Although the second interview does reveal the child's confusion, and is arguably helpful to the defense, we emphasize that this recording also includes the child's "yeah" response. Therefore, if the second interview was introduced to the grand jury, as well as viewed in the light most favorable to the State, it would have provided direct evidentiary support for the time frame specified in the indictment. We do not interpret her repeated statements that the alleged sexual abuse started before the 2018-2019 school year to mean the abuse stopped before the start of said school year. Indeed, as we have noted, the record makes clear that the child could not recall when the alleged sexual abuse ended.

While it is unclear to us why the prosecutor chose not to introduce the recording of the second interview, we discern no stratagem to intentionally mislead the grand jury. Nor do we view the assistant's prosecutor's questions to the detective as constituting intentional misconduct. Although the detective's testimony may have oversimplified, and thus overstated the clarity of the child's statements regarding the relevant time frame, we are satisfied that the prosecutor's questions to the detective did not rise to the level of "extreme

prosecutorial interference with the grand jury's decision-making process," nor constitute an "intentional subversion of the grand jury process." Murphy, 110 N.J. at 35.

We are also not convinced that the grand jury "would have reached a different result but for the prosecutor's error." Majewski, 450 N.J. Super. at 355–56. Had the prosecutor played the recording of the second interview, the jury would have learned that the child remained uncertain as to when the alleged sexual abuse began and ended. But nothing in the second interview eviscerated the reasonable inference that at least some alleged acts of sexual conduct occurred during the course of the 2018-2019 school year, especially in light of her repeated statements that the incidents of sexual contact occurred during her morning routine on school days. Whether the State may have difficulty ultimately proving at trial when the alleged sexual contact occurred does not mean that the prosecutor intentionally misled the grand jury or that the indictment is palpably deficient.

We also deem it important, for purposes of assessing defendant's prosecutorial misconduct claim, that the prosecutor sought to limit, not expand, the time frame of the recurring acts of alleged sexual abuse. In K.A.W., the Court noted that, "[t]he aim is to narrow the time frame of the occurrence as

complained of—if not to the extent of an exact date or dates, then possibly in respect of seasons of the year." 104 N.J. at 122–23. We believe the prosecutor's effort to narrow the time frame comports with the goal expressed in K.A.W.

IV.

We turn next to defendant's challenge to the trial court's order to dismiss the indictment without prejudice. Defendant raises the following contentions for our consideration:

> POINT I.
> THE SWORN TESTIMONY OF J.B. BLATANTLY CONTRADICTS THE STATE'S INDICTMENT
> (Raised below)
>
> POINT II.
> THE STATE'S COMPLAINT AND INDICTMENT ARE NOT SPECIFIC [AS] THEY CONTRADICT THE EXPRESS LANGUAGE OF THE INDICTMENT. THAT REQUIRES A REVIEW OF BOTH THE MAY 6, 2019 STATEMENT AND THE MAY 9, 2019 STATEMENT OF THE ALLEGED VICTIM
> (Raised below)
>
> POINT III.
> THE TRIAL COURT WAS CORRECT IN DENYING THE STATE'S MOTION FOR RECONSIDERATION
> (Not raised below)
>
> A. CRIMINAL COURTS ONLY PERMIT TO FILE A MOTION FOR RECONSIDERATION IN LIMITED CONTEXTS

23

B. IF THE COURT FINDS THE MOTION FOR RECONSIDERATION IS PROPER, THE STATE'S APPLICATION MUST STILL BE DENIED

C. THE COURT'S DETERMINATION THAT J.B.'S STATEMENT CONTAINED CONTRADICTIONS CANNOT BE OVERTURNED BY A MOTION FOR RECONSIDERATION
(Raised below)

D. THE COURT PROPERLY DETERMINED J.B. SPECIFICALLY DENIED THE SEXUAL ABUSE OCCURRED WHEN SHE WAS EIGHT (8) YEARS OLD
(Raised below)

E. AS A PRELIMINARY MATTER, THE COURT MUST DETERMINE JURISDICTION UNDER RULE 1:7-4(B)
(Raised below)

POINT IV.
COUNT 3 OF THE INDICTMENT REQUIRES DISMISSAL BECAUSE THE VICTIM DENIED IT HAPPENED AND CANNOT INDICATE WHEN IT HAPPENED
(Not raised below)

POINT V.
THE TRIAL COURT FAILED IN BOTH INSTANCES TO MAKE FINDINGS OF LAW PURSUANT TO RULE 1:7-4
(Not raised below)

Defendant also raises the following points in his reply brief in A-2045-20:

N.J. LAW REQUIRES ACCURATE "TIME" INFORMATION SET FORTH IN A COMPLAINT AS

INFORMED BY THE DETAILS DISCLOSED IN THE STATE'S INVESTIGATION
(Raised below)

THE TIME INFORMATION IN THE INTERVIEW OF J.B. OF MAY 6, 2019 AND MAY 9, 2019

THE TRIAL COURT FAILED TO APPLY THE BALANCING TEST OF K.A.W. AS TO CHARGING DECISIONS
(Raised below)

THE DEFENDANT RELIES ON THE LEGAL ANALYSIS OF THE [TRIAL COURT,] FOUND IN HIS ORDER AND OPINION DATED AUGUST 21, 2020
(Raised below)

Defendant additionally raises the following points in his reply brief in A-2087-20:

THE INDICTMENT SHOULD BE DISMISSED WITH PREJUDICE IN THAT THE STATE CANNOT ESTABLISH A TIMELINE
(Raised below)

THE ARGUMENT OF THE STATE THAT THE TESTIMONY OF J.B. IS CLEAR AND CONCISE AS TO SATISFY THE LAW UNDER K.A.W. IS WITHOUT MERIT
(Raised below)

THE TRIAL COURT CONCLUDED THAT THE STATE LACKS ANY FORM OF A TIMELINE
(Raised below)

A-2045-20

THE TRIAL COURT CORRECTLY DISMISSED THE INDICTMENT BECAUSE IT WAS BASED ON BLATANT MISREPRESENTATIONS BY THE STATE TO THE GRAND JURY
(Raised below)

THE STATE'S ARGUMENT THAT THE MAY 9, 2019 INTERVIEW WAS GIVEN TO THE GRAND JURY IS FRIVOLOUS
(Raised below)

We have already addressed most of defendant's contentions in our discussion of the State's challenge to the dismissal of the indictment without prejudice. For the most part, defendant's arguments are subsumed in our decision to vacate the trial court's order to dismiss the indictment without prejudice. If there is no basis to dismiss the indictment without prejudice, which would allow the prosecutor to re-present that matter to another grand jury, there could be no basis to dismiss the indictment with prejudice, thereby precluding another indictment and effectively affording defendant transactional immunity for the alleged sexual abuse of the child.

We focus on defendant's contention that the eight-month time frame specified in the indictment provides inadequate notice to enable defendant to prepare a defense. We affirm the trial court's ruling that the indictment does not violate defendant's due process rights. We do so substantially for the reasons

expressed by the trial court in its oral decision and subsequent written opinion denying defendant's motion for reconsideration. We add the following:

Our Supreme Court spelled out the analytical framework for addressing this constitutional issue in K.A.W., 104 N.J. at 112. The Court specifically addressed

> whether a complaint in a juvenile delinquency action, charging sexual assault on a victim younger than thirteen years of age, must specify an exact date of occurrence. The answer to that question is "no." For constitutional due process purposes, the adequacy of a charge set forth in a juvenile delinquency complaint, as in a criminal indictment, turns on whether the notice contained in the complaint sufficiently apprises the accused of the offense with which he [or she] is charged to enable him [or her] to prepare a defense.
>
> [Id. at 113–14.]

The Court rejected the Appellate Division holding that a complaint must set forth a specific date or dates of the offense, concluding instead that "'fair notice' in this context is not concerned exclusively with the specificity of a date of offense." Id. at 114.

In that case, the juvenile complaint originally alleged that the acts of sexual assault occurred "in midyear 1984," but was amended to allege that the sexual assaults occurred "on divers dates from January 1983 through August 1984." Id. at 115. The juvenile argued that this time frame left him unable to

construct a defense, prejudicing him because he had visited his mother in Virginia for a good portion of that time period and thus had a potential alibi for at least part of the time period during which the divers dates fell. Id. at 116.

The Court recognized the need to balance the State's interest in the vigorous prosecution of child abusers against the accused's interest in receiving adequate notice of the offense to permit him or her to prepare a defense. Id. at 119. The victim was seven years old when the sexual assaults allegedly took place. The Court recognized that a victim may be "so young as to make it well-nigh impossible to state the exact time of that offense." Id. at 118 (emphasis in original). The Court explained "our concern is with the specificity required, in the interest of fairness, at the charging stage of the proceeding." Ibid. The Court added:

> In gauging that fairness we need no battery of experts to convince us that a child of the age of five to seven years . . . cannot recall precise dates or even approximate times the way a normal adult can. Children of that age do not think in terms of dates or time spans. Unlike adults, their lives are not controlled by the clock or the calendar—at least not as rigidly and surely not as consciously.
>
> [Ibid.]

The Court went on to provide an analytical paradigm to balance the competing interests. First, the Court focused on whether the State had disclosed

28

all the information it possessed about when the acts of sexual abuse occurred. In that case, as in the one presently before us, there was full disclosure. Ibid. The Court made clear, however, that full disclosure was not enough to avoid dismissal. The Court recognized there could be no fixed, precise standards to guide the resolution of the issue. The Court instead presented "some general criteria to aid a court in its review of the adequacy of 'time' information set forth in a complaint, as informed by the details disclosed in the State's investigation." Id. at 121-22.

The Court then provided an illustrative list of relevant factors, including "the length of the alleged period of time in relation to the number of individual criminal acts" and "the ability of the victim or complaining witness to particularize the date and time of the alleged transaction or offense." Id. at 122 (quoting People v. Morris, 61 N.Y.2d 290, 296 (1984)). The list also includes "the age and intelligence of the victim, the extent and thoroughness of the prosecutor's investigative efforts to narrow the time frame of the alleged offense, and whether there was a continuous course of conduct." Ibid. Importantly for purposes of the present appeal, the Court emphasized that,

> [t]he aim is to narrow the time frame of the occurrence
> as complained of—if not to the extent of an exact date
> or dates, then possibly in respect of seasons of the year,
> or incidents in the victim's life such as a death in the

family, or a change in a family member's job routine, or the beginning of the school year or of vacation time or of extracurricular activities.

[Id. at 122-23.]

The Court further stressed that "to the extent the juvenile or criminal defendant makes known his [or her] defense—here, non-involvement, supplemented by an alibi for a brief period during the [twenty]-month span— that too may be placed in the scales." Id. at 123. The Court added

> that an alibi defense might suffer in the face of an extended time frame does not constitute a sufficient basis for dismissal of a complaint in this context, where a 'number of occasions' of misconduct are alleged. It may be pertinent in this regard that whereas the opportunity to victimize an infant is enhanced by a degree of family relationship or sharing of living quarters or frequency of contact, by the same token the likelihood of the victim being able to recount a specific time of the offenses is reduced. The events blur.
>
> [Ibid.]

Applying these factors to the present case, we are satisfied the prosecutor made considerable investigative efforts to narrow the time frame.

We note also that in the matter before us, defendant has not suggested that he intends to rely on an alibi defense. Nor does such a defense seem plausible given the nature of the allegations. We surmise that the defense in this case will not be that defendant was not home alone with the child before he took her to

school. Rather, we expect the gravamen of the defense to be that the child was not telling the truth, or at least was mistaken, in describing the touching alleged by the State to constitute "sexual contact" as defined in N.J.S.A. 2C:14-1(d). The lack of specificity of the timeline does not prevent defendant from preparing to mount that defense.

In sum, we agree with the trial court that the time frame specified in the indictment affords defendant sufficient notice to permit him to prepare a defense to the charge of repeated acts of sexual abuse. Given the allegation of repeated incidents of sexual abuse on mornings before defendant took the child to school, we believe that requiring an eight-year-old child in these circumstances to be more specific "would effectively preclude prosecution of those who have sexually abused children who are unable to specify a date." Id. at 12. Of course, defendant at trial will be free to highlight the child's inability to recall aspects of the alleged sexual abuse. But the indictment provides sufficient notice to allow defendant to prepare his defense and to cross-examine the child.

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(2).

Affirmed in part and reversed in part.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2045-20