**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2180-20

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TIWAN FLAGLER, a/k/a
TUQAUN ASHLEY,

    Defendant-Appellant.

_____

Submitted January 9, 2024 – Decided February 27, 2024

Before Judges Gooden Brown and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 13-01-0081.

Joseph E. Krakora, Public Defender, attorney for appellant (Craig S. Leeds, Designated Counsel, on the briefs).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Patrick Ryan McAvaddy, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Tiwan Flagler appeals from the December 11, 2020, and the October 17, 2022, Law Division orders denying his petition for post-conviction relief (PCR) without an evidentiary hearing.  We affirm.

I.

In 2013, a Hudson County grand jury indicted Flagler and his codefendant, Darnell Wilson, for first-degree armed robbery, N.J.S.A. 2C:15-1 (count one); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-1 (count two); second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count three); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count four).  Flagler was also indicted in two additional counts for second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b) (count five); and second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a) (count six).  Following a 2014 joint jury trial, during which count six was dismissed on Flagler's motion for judgment of acquittal, see R. 3:18-1, both defendants were convicted on all remaining counts.  After appropriate merger, Flagler was sentenced in 2015 to an aggregate extended term of thirty years, subject to the eighty-five percent parole ineligibility provisions of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

In a consolidated unpublished opinion, we affirmed both defendants' convictions and sentences, State v. Flagler, Nos. A-3357-14 and A-3395-14 (App. Div. May 11, 2018) (slip op. at 5), and the Supreme Court subsequently denied certification, State v. Flagler, 236 N.J. 46 (2018); State v. Flagler, 236 N.J. 49 (2018).

In our unpublished opinion, we detailed the facts as follows:

> On August 10, 2012, M.I. was in Jersey City selling home theater and stereo systems out of his truck. . . . Defendants were two of M.I.'s repeat customers, having previously purchased from M.I. on multiple occasions. On the evening of August 10, M.I. agreed to meet Wilson and Flagler at the Gulf gas station on Route 440 and Duncan Avenue in Jersey City so that they could make a purchase. According to M.I., defendants arrived in a green Nissan Altima that was being driven by Wilson. Flagler was the front seat passenger.
>
> After examining the goods in M.I.'s truck, Wilson offered to buy several items, and advised M.I. that a friend of his also wished to make a purchase. However, because Wilson's friend was supposedly still at work, M.I. agreed to follow Wilson to his friend's job. While enroute, they communicated by phone so that they would not get separated. When they arrived at a school parking lot, Wilson switched his story, explaining that his friend was now "at his house." Although apprehensive, M.I. continued to follow defendants to a residence on Van Nostrand Avenue. Upon arrival, both cars parked in the adjacent driveway, but there was no sign of Wilson's friend. Nonetheless, M.I. and defendants exited their respective vehicles and continued to negotiate prices for the goods.

Flagler then asked M.I. to show him "how to connect a phone for your [MP3] to the back of the receiver." M.I. reached through the passenger side window of his truck to retrieve the MP3 wire to demonstrate. When he turned around, Flagler was pointing a gun in his face. Flagler slid the gun down into M.I.'s mid-section, pinning M.I. against the truck, and threatened M.I. stating, "[i]f you move . . . I don't give a f***, I'll blow it." Meanwhile, Wilson removed three home theater systems from M.I.'s truck and rifled through M.I.'s pockets, removing his cell phone and approximately twenty-one dollars in cash. When they returned to their vehicle to flee, M.I. pleaded with defendants to return his cell phone. Instead, Flagler pointed the gun out of the passenger side window towards M.I., prompting M.I. to duck behind his truck as defendants drove off.

After defendants left, M.I. drove to a gas station to get directions to the closest police station because he was unfamiliar with the area. M.I. was directed to the Jersey City police station where he reported the robbery to Officer Ryan Macaluso. M.I. also provided descriptions of defendants, their vehicle, a partial license plate, and the gun used in the robbery. . . . Once M.I.'s report was filed, Detective Michael Post was assigned to investigate the case.

Five days later, on August 15, 2012, Jersey City Police Officer Joseph Seals conducted a motor vehicle stop of a vehicle matching M.I.'s description being driven by a woman . . . . Based on information obtained during the stop, Post identified Wilson as a possible suspect and a six-person photo array, including Wilson's photograph, was prepared and presented to M.I. in a photo line-up identification procedure. As a result, M.I. positively identified Wilson as one of the

4

robbers and Post issued a warrant for Wilson's arrest. Five days later, on August 20, 2012, Seals observed the same vehicle occupied by two males matching M.I.'s descriptions traveling north on Bergen Avenue. Seals along with three other officers, including Officer Ed Redmond, conducted another motor vehicle stop. After the stop, Seals approached the Nissan on the driver side and identified Wilson as the driver. Upon confirming that the arrest warrant issued by Post was active, Seals placed Wilson under arrest.

Meanwhile, Redmond approached the Nissan from the passenger side and noted that both occupants were "breathing heavily," were "sweating" and "appeared nervous." Redmond observed a bulge on the left side of the passenger's waistline. Based on the location and the size of the bulge, Redmond suspected that it was a weapon and ordered the passenger, who was later identified as Flagler, out of the vehicle. After Flagler exited the vehicle, Redmond conducted a pat down and retrieved a loaded .380 caliber handgun . . . from Flagler's waistline. Flagler was then placed under arrest. . . . The following day, Post prepared a six-person photo array, including Flagler's photograph, and arranged for the array to be presented to M.I. in a photo line-up identification procedure. As a result, M.I. positively identified Flagler as the second robber. At trial, M.I. identified both defendants as the robbers and the handgun seized from Flagler as the gun used during the robbery.

[Flagler, slip op. at 5-9 (alterations in original) (footnotes omitted).]

In 2019, Flagler filed a timely pro se PCR petition, which was later supplemented by his certification, his amended PCR petition, and his attorney's

brief. PCR counsel also submitted Flagler's medical records to support the petition. In his submissions, among other things, Flagler asserted his trial attorney was ineffective by failing to: (1) file a Wade/Henderson[1] motion to suppress the impermissibly suggestive identification procedure utilized to identify defendant; (2) request a jury instruction on cross-racial identification inasmuch as the victim was White and defendant was African-American; (3) request an adverse inference jury instruction based on Seals's failure to preserve photos of the suspect vehicle taken during the first motor vehicle stop; (4) request that the trial judge voir dire the remaining jurors individually to assess taint after one juror was excused for reading a newspaper article about the case; (5) move to dismiss the indictment based on the prosecutor presenting half-truths to the grand jury in connection with the victim's alleged contradictory accounts; (6) request that counts three and five be severed for trial as they were distinct from one another; (7) present medical records of defendant's foot injury that purportedly rendered him temporarily disabled and physically incapable of carrying out the robbery; and (8) advise defendant of the advantages and disadvantages of testifying in his own defense. Defendant also argued the

---

[1] United States v. Wade, 388 U.S. 218 (1967); State v. Henderson, 208 N.J. 208 (2011).

A-2180-20

cumulative impact of his attorney's failures deprived him of a fair trial. Additionally, defendant argued his appellate counsel was ineffective by failing to raise ineffective assistance of trial counsel and challenge the warrantless search and seizure on direct appeal.

Following oral argument, the PCR judge entered an order on December 11, 2020, denying defendant's petition without an evidentiary hearing. In a supporting oral decision placed on the record on the same date, the judge reviewed the factual background and procedural history of the case, applied the governing legal principles, and concluded defendant failed to establish a prima facie claim of ineffective assistance of counsel (IAC). The judge also determined defendant was not entitled to an evidentiary hearing. Because the judge failed to address all the issues raised by defendant, on July 5, 2022, we granted defendant's motion for a limited remand for the judge to address the omitted issues. In an October 17, 2022, order, with the exception of a sentencing issue that is not part of this appeal, the judge denied the petition. In support, the judge placed a comprehensive oral decision on the record rejecting the remaining claims. This appeal followed.[2]

---

[2] The judge subsequently addressed the sentencing issue in an April 27, 2023, order and written decision, which are not the subject of this appeal.

A-2180-20

On appeal, defendant raises the following points for our consideration:

POINT I

[DEFENDANT] WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE <u>UNITED STATES</u> AND <u>NEW JERSEY</u> <u>CONSTITUTIONS</u> AND THE [TRIAL] COURT ERRED IN CONCLUDING OTHERWISE.

    A.    Trial Counsel Was Ineffective By Failing To File A <u>Wade/Henderson</u> Motion To Suppress The Identification Procedure Used To Identify The Defendant.

    B.    Trial Counsel Was Ineffective By Failing To Request An Adverse Inference Jury Charge Based Upon The State's Loss And/Or Destruction Of Evidence.

    C.    Trial Counsel Was Ineffective By Failing To Request That The Trial Court Conduct A <u>Voir Dire</u> Of The Jury After A Juror Was Excused For Reading A Newspaper Article About The Case.

    D.    Trial Counsel Was Ineffective By Failing To Conduct Adequate Pretrial Preparation And/Or Investigation And To Thereafter Present A Defense On Behalf Of [Defendant].

    E.    Trial Counsel Was Ineffective By Failing To File A Motion To Dismiss The Indictment Based [On] Grand Jury Improprieties.

F. The Cumulative Effect Of The Errors Complained Of Rendered The Trial Unfair.

POINT II

[DEFENDANT] WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

POINT III

DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF PCR COUNSEL.

POINT IV

THE [TRIAL] COURT ERRED IN DENYING [DEFENDANT]'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING.

POINT [V[3]]

[DEFENDANT] WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE UNITED STATES AND NEW JERSEY CONSTITUTIONS AND THE [TRIAL] COURT ERRED IN CONCLUDING OTHERWISE.

A. Trial Counsel Was Ineffective By Failing To File A Wade/Henderson Motion To Suppress The Identification Procedure Used To Identify The Defendant.

B. Trial Counsel Was Ineffective By Failing

---

[3] This point was presented in defendant's supplemental brief submitted following the limited remand. Although there are redundancies, defendant relies on both his original merits brief and his supplemental brief to support his appeal.

To Request A Cross-Racial Identification
Jury Instruction.

C.  Trial Counsel Was Ineffective By Failing
    To Request An Adverse Inference Jury
    Charge Based Upon The State's Loss
    And/Or Destruction Of Evidence.

D.  Trial Counsel Was Ineffective By Failing
    To Request That Counts Three And Five
    Be Severed At Trial.

E.  Trial Counsel Was Ineffective By Failing
    To Adequately Advise [Defendant]
    Regarding His Constitutional Right To
    Testify On His Own Behalf.

F.  The Cumulative Effect Of The
    Errors Complained Of Rendered The
    Trial Unfair.

II.

We begin by setting out some guideposts that inform our review. "We review the legal conclusions of a PCR judge de novo." State v. Reevey, 417 N.J. Super. 134, 146 (App. Div. 2010). "[W]e review under the abuse of discretion standard the PCR court's determination to proceed [with or] without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to [PCR], . . . then an evidentiary hearing need not be granted." State v. Marshall, 148 N.J. 89, 158

(1997) (citations omitted). "[W]here . . . no evidentiary hearing was conducted," as here, "we may review the factual inferences the [trial] court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)).

An evidentiary hearing is only required when (1) a defendant establishes "a prima facie case in support of [PCR]," (2) the court determines that there are "material issues of disputed fact that cannot be resolved by reference to the existing record," and (3) the court determines that "an evidentiary hearing is necessary to resolve the claims" asserted. State v. Porter, 216 N.J. 343, 354 (2013) (alteration in original) (quoting R. 3:22-10(b)). See R. 3:22-10(e)(2) (providing "[a] court shall not grant an evidentiary hearing . . . if the defendant's allegations are too vague, conclusory or speculative"). "To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits." R. 3:22-10(b).

As to trial counsel, to establish a prima facie IAC claim, a defendant must demonstrate "by a preponderance of the credible evidence," State v. Echols, 199 N.J. 344, 357 (2009), that his or her attorney's performance fell below the objective standard of reasonableness set forth in Strickland v. Washington, 466

U.S. 668, 687 (1984), and adopted in State v. Fritz, 105 N.J. 42, 49-58 (1987), and that the outcome would have been different without the purported deficient performance. Stated differently, a defendant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

To satisfy the first prong, a defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. "[I]n making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689. As such, a defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

To satisfy the prejudice prong, "[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694). This prong generally requires that a defendant establish a "reasonable

12

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

The same Strickland/Fritz standard applies to claims of ineffective assistance of appellate counsel. State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007). However, "a defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue that defendant requests on appeal." Id. at 515 (citing Jones v. Barnes, 463 U.S. 745, 753-54 (1983)). Instead, appellate counsel may "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible, or at most on a few key issues." Jones, 463 U.S. at 751-52. Furthermore, appellate counsel must "examine the record with a view to selecting the most promising issues for review." Id. at 752. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

Failure to meet either prong of the two-pronged Strickland/Fritz test results in the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280 (2012) (citing Echols, 199 N.J. at 358). That said, "courts are permitted leeway to choose to examine first whether a defendant has been prejudiced, and if not,

to dismiss the claim without determining whether counsel's performance was constitutionally deficient." State v. Gaitan, 209 N.J. 339, 350 (2012) (citation omitted) (citing Strickland, 466 U.S. at 697).

Applying these principles, we reject defendant's contentions based solely on defendant's inability to establish the prejudice prong. We therefore dismiss the claims "without determining whether counsel's performance was constitutionally deficient" in any respect. Ibid. First, as to trial counsel's failure to file certain motions, "[i]t is not ineffective assistance of counsel for defense counsel not to file a meritless motion[.]" State v. O'Neal, 190 N.J. 601, 619 (2007). Here, defendant argues his attorney's failure to file a Wade/Henderson motion to suppress the identification procedure constituted IAC because there was "no contemporaneous note of the identification" and the procedure was "not electronically recorded" as currently required under State v. Anthony, 237 N.J. 213, 233-34 (2019).[4] Defendant also argues his attorney's failure to file a motion

---

[4] In Anthony, our Supreme Court held that the failure to electronically record an identification procedure or prepare a contemporaneous verbatim account of the exchange automatically entitled a defendant "to a pretrial hearing on the admissibility of identification evidence . . . ." 237 N.J. at 233-34. See also State v. Delgado, 188 N.J. 48, 51 (2009) (requiring "as a condition to the admissibility of out-of-court identifications, that the police record, to the extent feasible, the dialogue between witnesses and police during an identification procedure"); R. 3:11 (codifying Delgado). However, at the time this case was pending trial,

to dismiss the indictment constituted IAC because the prosecutor failed to tell the grand jury that the victim had provided differing accounts of the robbery and had initially identified another individual as the robber.

However, as we stated in rejecting similar claims raised by codefendant Wilson in his unsuccessful appeal of the denial of his PCR petition:

> Regarding the Wade/Henderson motion, given the familiarity between defendant and the victim, such a motion would not have been meritorious. Likewise, a motion to dismiss the indictment would have been unsuccessful. Although the detective reported that the victim initially identified an individual named "Big Nate" as involved in the robbery, at trial, the victim clarified that it was a "[m]isunderstanding." The victim explained that he "could have mentioned [Big Nate's] name" but "did[ not] say he had anything to do with it." Instead, the victim said "[he] tried to tell [the detective] that [he] kn[ew] the[ robbers] from [Big Nate]." As such, the reported mistaken identification did not meet the standard of "clearly exculpatory" evidence

Henderson was the governing law and under Henderson, "to obtain a pretrial hearing, a defendant ha[d] the initial burden of showing some evidence of suggestiveness that could lead to a mistaken identification." 208 N.J. at 288. "That evidence . . . must be tied to a system . . . variable," id. at 288-89, such as whether the identification was "performed double-blind"; whether "neutral, pre-identification instructions" were given to the witness; whether "the suspect [stood] out from other members of the lineup"; whether "the witness received any . . . feedback[] about the suspect or the crime"; and whether the administrator "record[ed] the witness' statement of confidence immediately after the identification," id. at 289-90. Here, defendant failed to identify any evidence of suggestiveness based on system variables and no such evidence is apparent in the record.

requiring disclosure by the prosecutor under [State v. Hogan, 144 N.J. 216, 237 (1996)] (requiring prosecutors to disclose evidence to the grand jury only when the evidence "both directly negates the guilt of the accused and is clearly exculpatory").[5]

As a result, defendant cannot establish the prejudice prong under Strickland because either motion would not have been meritorious. See State v. Roper, 378 N.J. Super. 236, 237 (App. Div. 2005) (explaining "[i]f [a motion] had no merit, then [a] defendant would be unable to establish the 'prejudice prong' of the [IAC] standard established by Strickland"); see also State v. Fisher, 156 N.J. 494, 501 (1998) (explaining that when the IAC claim is based on counsel's failure to file a motion, "the defendant not only must satisfy both parts of the Strickland test but also must prove that [the motion was] meritorious").

[State v. Wilson, No. A-0393-21 (App. Div. May 17, 2023) (slip op. at 19-20) (all but tenth and eleventh alterations in original).[6]]

Equally unavailing is defendant's claim that his attorney was ineffective by not moving to sever counts three and five, each charging unlawful possession of a handgun. Because the State's position was that the handgun found on

---

5   See also State v. Majewski, 450 N.J. Super. 353, 367 (App. Div. 2017) ("Contradictory eyewitness testimony . . . [is] not 'clearly exculpatory,' and need not be revealed to the grand jury." (quoting Hogan, 144 N.J. at 238)).

6  Given our decision, we reject as harmless defendant's newly minted claim that PCR counsel was ineffective by failing to provide the grand jury transcript or reference it in counsel's brief.

defendant's person during the August 20, 2012, motor vehicle stop was the same gun used to perpetrate the armed robbery on August 5, 2012, the offenses were interrelated, and a severance motion would have proven futile. See State v. Moore, 113 N.J. 239, 273 (1988) ("[W]here the evidence establishes that multiple offenses are linked as part of the same transaction or series of transactions, a court should grant a motion for severance only when defendant has satisfied the court that prejudice would result."); see also State v. Chenique-Puey, 145 N.J. 334, 341 (1996) (explaining that if evidence would be admissible at both trials, severance may be denied "because 'a defendant will not suffer any more prejudice in a joint trial than he would in separate trials.'" (quoting State v. Coruzzi, 189 N.J. Super. 273, 299 (App. Div. 1983))).

Turning to defendant's claim that his attorney was ineffective by failing to request certain jury charges, we reject out of hand defendant's contention that his attorney was ineffective by not requesting a cross-racial identification jury charge because, as we pointed out in affirming the denial of Wilson's PCR petition, such a charge was provided sua sponte by the trial judge. See Wilson, slip op. at 21. Regarding the adverse inference jury charge, defendant argues his attorney was ineffective by failing to request the charge "based upon the State's loss and/or destruction" of photographs of the suspect vehicle taken five

17

days before defendant was apprehended in the same vehicle. According to defendant, although "Seals took pictures of the vehicle" during the earlier motor vehicle stop and "emailed them to himself so he could attach them to his police report," during "his trial testimony, . . . Seals admitted that he no longer had the[] pictures."

Our Supreme Court held that upon a defendant's request, "an adverse inference charge may be given when a police officer [loses or] destroys his or her investigatory notes before trial." State v. W.B., 205 N.J. 588, 597, 608-09 (2011). However, not every instance "when contemporaneous notes are lost or destroyed" requires an adverse inference charge. Id. at 609 n.10. Here, as the PCR judge found, defendant "has not shown how the failure to provide an adverse jury instruction in this instance as to the lost photographs was unreasonable based upon the[] circumstances. Nor has [defendant] shown how he was prejudiced by the lack of an adverse jury instruction."

Indeed, as we also noted in rejecting Wilson's identical claim in his PCR appeal,

> it is unclear how the loss of the photographs of the suspect vehicle, taken "five days before [defendant] was arrested" during a traffic stop of a "person not connected to th[e] case," could prejudice defendant. Moreover, although the photographs could not be located, the officer documented and included in his

18

report the make, model, year, and registration number of the vehicle, which is essentially equivalent to the information the photographs would have revealed.

[Wilson, slip op. at 22 (alterations in original).]

Turning to defendant's claim that his attorney was ineffective by not requesting that the trial judge voir dire the remaining jurors individually, instead of as a group, to assess "the potential taint" stemming from one juror being excused for reading a newspaper article about the case, in his direct appeal, we determined there was no error in connection with this issue:

> Here, there was no evidence that any of the remaining jurors had any knowledge of the newspaper articles. The judge polled the jury as a group and individually questioned the juror who admitted reading one of the articles before excusing her. Defendant never requested any further voir dire of the remaining jurors and raises the issue for the first time on appeal. Thus, at the very least, defendant must show it was plain error to forego a voir dire he never requested. State v. Winder, 200 N.J. 231, 252 (2009); see, e.g., [State v. R.D., 169 N.J. 551, 554 (2001)] (finding no plain error for not questioning a juror about extraneous knowledge). Based on this record, we find that the two-prong analysis articulated in [State v. Bey, 112 N.J. 45, 83-90 (1988)] was satisfied and the trial court acted within its discretion in questioning the jurors as a group. [State v. Feaster, 156 N.J. 1, 53-54 (1998)]. We find no error, much less plain error, warranting reversal.
>
> [Flagler, slip op. 40-41.]

19

If there was no error, then there can be no prejudice to satisfy the second prong of the <u>Strickland</u>/<u>Fritz</u> test because "[t]hat second prong . . . is an exacting standard" and "'[t]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached.'" <u>State v. Allegro</u>, 193 N.J. 352, 367 (2008) (second alteration in original) (quoting <u>State v. Castagna</u>, 187 N.J. 293, 315 (2006)).

Defendant further claims that his attorney was ineffective by failing "to fully investigate his case and present his medical records as evidence to support his contention that due to the condition of his health at the time of the incident, . . . it was impossible for him to have played a role in this crime." (Internal quotation marks omitted). According to defendant, "he was on crutches, almost unable to walk, suffering from a recent gunshot wound[]." The supporting medical records submitted with his petition showed that defendant underwent foot surgery on June 26, 2012, to remove "bullet fragments in the soft tissues of [his right] foot." After the operation, during which the fragments were "removed successfully," defendant had a follow-up appointment on July 9, 2012, and was referred for physical therapy. The referral advised defendant of a "strict non[-]weight bearing" precaution.

However, nothing in defendant's proffered medical records indicates that defendant would have been physically incapable of committing the robbery in August, well over a month after the surgery. Notably, Wilson did the driving, removed the home theater systems from the victim's truck, and rifled through the victim's pockets. Moreover, defendant presented no evidence of his actual physical condition at the time of the robbery. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999) ("[W]hen a petitioner claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification."). Without such evidence, defendant's claim amounts to a "bald assertion[]," which does not constitute a prima facie case of IAC. Ibid. ("[A] petitioner must do more than make bald assertions that he was denied the effective assistance of counsel.").

Additionally, defendant claims his attorney was ineffective by failing to "discuss with him either the advantages or disadvantages of testifying in his own defense," thereby depriving him of "an opportunity to make an informed decision." Unquestionably, "[i]t is the responsibility of a defendant's counsel . . . to advise defendant on whether to testify and to explain the tactical

21

advantages or disadvantages of doing so or not doing so" and "counsel's failure to do so will give rise to a claim of ineffectiveness of counsel." State v. Bey, 161 N.J. 233, 270 (1999) (quoting State v. Savage, 120 N.J. 594, 630-31 (1990)).

In rejecting defendant's claim, the PCR judge agreed with the State that the record contained no evidence to support defendant's contention. The PCR judge pointed out that defendant indicated to the trial judge when questioned about his decision whether or not to testify that he understood his right. Indeed, the record reveals that the trial judge emphasized to defendant the importance of the decision whether "to testify or refrain from testifying," that defendant had an "absolute [r]ight" to testify, and that his attorney could "give [him] advice" to help him make the decision.

The trial judge also stressed that although "[i]t would be prudent" to listen to his attorney's advice, "[u]ltimately, the decision as to whether or not . . . [to] testify [was his] and [his] alone." Defendant responded affirmatively when the judge asked whether he understood. Further, the judge informed defendant that if he elected not to testify, then he also had to decide "whether or not" he wanted the judge to give a jury instruction "concerning [his] decision not to testify." However, the judge again stressed that "the decision [was his] and [his] alone."

After reading the precise instruction so that defendant could make an informed decision, the judge told defendant:

> Now, there are a lot of different views as to whether that's beneficial or not beneficial, but ultimately, the decision as to whether or not that instruction is given to the jury is up to you.
>
> You need to speak . . . about that with your attorney before you close your case so I know whether or not that instruction will be included or will not be.
>
> Do you understand that, sir?

Defendant again answered in the affirmative, demonstrating that he understood.

After the State rested its case, the judge asked defendant for his decision, and defendant indicated he was electing not to testify. Defendant was also present when Wilson's attorney confirmed on the record that he and Wilson had discussed his right to testify "on multiple occasions" and he (Wilson's attorney) had "given [Wilson his] best advice." Defendant did not indicate that he had not had the benefit of similar discussions with his attorney. Thus, the record provides ample evidence that defendant understood his constitutional right to testify and made an informed decision not to testify. We therefore reject defendant's unsupported claim to the contrary.

Finally, defendant asserts his appellate counsel was ineffective by failing "to argue ineffective assistance of trial counsel" on direct appeal. However,

23

"[o]ur courts have expressed a general policy against entertaining [IAC] claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992).  Defendant also argues his appellate counsel should have challenged the trial court's denial of the pre-trial motion to suppress the evidence seized during the warrantless search that followed the second motor vehicle stop.   However, Wilson's appellate counsel challenged the denial on direct appeal and we upheld the trial judge's ruling in our consolidated opinion.  See Flagler, slip op. 10-16.  Thus, defendant cannot show prejudice.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary or the argument was without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).[7]

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[7]  Because we conclude defendant was not prejudiced by any of his attorney's purported deficiencies, his cumulative error argument also fails.

A-2180-20