NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2032-15T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

VICTORIA L. MAJEWSKI,

    Defendant-Appellant.

_____

> APPROVED FOR PUBLICATION
>
> June 12, 2017
>
> APPELLATE DIVISION

Submitted April 4, 2017 — Decided June 12, 2017

Before Judges Messano, Espinosa and Suter.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Indictment No. 15-07-0573.

Joseph E. Krakora, Public Defender, attorney for appellant (Daniel S. Rockoff, Assistant Deputy Public Defender, of counsel and on the brief).

Robert L. Taylor, Cape May County Prosecutor, attorney for respondent (Gretchen A. Pickering, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

MESSANO, P.J.A.D.

Following the denial of her motion to dismiss Cape May County Indictment No. 15-07-0573, defendant Victoria L. Majewski pled guilty to the single count of that indictment, charging her

with fourth-degree aggravated assault, throwing bodily fluids at certain law enforcement officers, N.J.S.A. 2C:12-13 (the Statute). In accordance with the negotiated plea agreement defendant reached with the State, the judge imposed a one-year term of imprisonment, consecutive to the term of imprisonment defendant was then serving.

Defendant raises the following points on appeal:

POINT I

THE COURT ERRED BY DENYING MAJEWSKI'S MOTION TO DISMISS THE INDICTMENT.

(A) The Indictment Was Palpably Defective Because The Prosecutor Misrepresented The Criminal Statute To The Grand Jury.[1]

(B) The Indictment Was Palpably Defective Because The Prosecutor Did Not Tell The Jury About Exculpatory Evidence That Majewski Lacked The Required Purposeful Intent.

POINT II

THE COURT ERRED BY ACCEPTING MAJEWSKI'S GUILTY PLEA, WHICH WAS INSUFFICIENT AS TO BOTH THE MENTAL STATE AND THE BAD ACT. (Not Raised Below).

(A) The Admissions Made By Majewski During Her Plea Did Not Satisfy The Mens Rea Requirements Of N.J.S.A. 2C:12-13, A Specific Intent Offense That Requires Proof Of Purpose For Every Element Alleged.

(B) The Admissions Made By Majewski During Her Plea Did Not Satisfy The Actus Reus

---

[1] We have omitted the sub-sub-points of defendant's brief.

Alleged In The Indictment, Because The
Prosecutor Failed To Instruct The Grand Jury
On The Critical Statutory Clause.

We conclude the judge should have granted defendant's motion to dismiss the indictment. We therefore vacate defendant's judgment of conviction and dismiss the indictment without prejudice to the State's ability to present the matter to the grand jury anew.

I.

The Statute provides:

> A person <u>who throws a bodily fluid at a
> . . . law enforcement officer while in the
> performance of his duties or otherwise
> purposely subjects such employee to contact
> with a bodily fluid commits an aggravated
> assault</u>. If the victim suffers bodily
> injury, this shall be a crime of the third
> degree. Otherwise, this shall be a crime of
> the fourth degree. A term of imprisonment
> imposed for this offense shall run
> consecutively to any term of imprisonment
> currently being served and to any other term
> imposed for another offense committed at the
> time of the assault. Nothing herein shall
> be deemed to preclude, if the evidence so
> warrants, an indictment and conviction for a
> violation or attempted violation of chapter
> 11 of Title 2C . . . or subsection b. of
> [<u>N.J.S.A.</u>] 2C:12-1 or any other provision of
> the criminal laws.
>
> [(Emphasis added).]

"'Bodily fluid' means saliva, blood, urine, feces, seminal fluid or any other bodily fluid." <u>N.J.S.A.</u> 2C:12-12.

In this case, the prosecutor provided the grand jurors with preliminary instructions "on some new law"[2] by reading the following:

> A person who throws a bodily fluid at a Department of Corrections employee, county corrections officer, juvenile corrections officer, State juvenile facility, juvenile detention staff member, probation officer, any sheriff, undersheriff or sheriff's officer or any municipal, county or State law enforcement officer while in the performance of their duties is guilty of a crime of the fourth degree.

The prosecutor then appropriately defined the term "bodily fluid."

The evidence before the grand jury was limited to the brief testimony of an investigator with the Cape May County Sheriff's office. She testified that on June 14, 2015, defendant was an inmate in the county jail. "[D]uring a routine move" of another inmate near defendant's cell, defendant "spit in the face" of one of the corrections officers. Another officer witnessed this. The prosecutor then read the proposed indictment, specifically, that defendant "did throw bodily fluids at [the corrections officer] . . . [while the] said[] [o]fficer . . . was acting in the performance of her duties while in uniform or

---

[2] The transcript of the grand jury proceedings starts in mid-sentence. We assume the prosecutor had provided instructions to the grand jurors on other criminal offenses before presenting this case.

exhibiting evidence of her authority[,] contrary to" N.J.S.A. 2C:12-13. The actual indictment contains the language we have quoted without reference to the culpability element of the offense.

Defendant moved to dismiss the indictment, arguing the Statute required the State prove she "intended to hit [the officer] with a bodily fluid." She noted the State's discovery acknowledged her intention was to spit on another inmate, not the officer. Citing State ex rel S.B., 333 N.J. Super. 236 (App. Div. 2000), defendant argued the Statute did not permit a theory of "transferred intent" to elevate spitting at someone, even if it was an offense, into an aggravated assault simply because the fluid unintentionally hit a corrections officer.

Defendant also argued the judge should dismiss the indictment because the State failed to present exculpatory evidence to the grand jury. Specifically, the investigating sheriff's officer, who interviewed defendant's intended inmate target and other inmates who witnessed the incident, concluded in the administrative disciplinary charge he lodged against defendant that she spat at the other inmate. The charging report made no mention of the fluid striking the officer. The

disciplinary investigation resulted in defendant's loss of privileges for five days.[3]

In opposing the motion, the State acknowledged the Statute's ambiguity regarding the requisite mental state. Nevertheless, it argued the Statute explicitly incorporated the doctrine of transferred intent, because it criminalized not only the throwing of a bodily fluid at an officer, but also conduct that "otherwise purposely subjected [the officer] to contact with a bodily fluid." The State also argued that S.B. supported application of the doctrine of transferred intent. Lastly, the State contended the statements of other inmates were not clearly exculpatory evidence that negated defendant's guilt, see State v. Hogan, 144 N.J. 216, 237 (1996), and it had no obligation to charge the grand jurors "regarding a potential defense."

After considering oral argument, the judge concluded the investigative report and statements were not "clearly exculpatory," and, therefore, the prosecutor did not violate the Court's holding in Hogan by not producing them before the grand jury. However, the judge specifically "left for another day" any decision regarding the culpable mental state required by the

---

[3] It is unclear from the record whether defendant was criminally charged in a complaint prior to the prosecutor's presentation to the grand jury. No complaint is in the record and the grand jury transcript makes no mention of one.

Statute, noting there was "some further analysis that need[ed] to be considered . . . before the matter is listed for trial." He denied defendant's motion.

Three days later, defendant entered her guilty plea. Under oath, she admitted getting into an altercation with another inmate and spitting at that inmate. Defendant acknowledged her "spit landed on" the corrections officer, who was standing nearby holding the other inmate.

## II.

Since its enactment in 1997, no published decision has construed the Statute. "The primary goal of statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" State v. Lenihan, 219 N.J. 251, 262 (2014) (quoting State v. Hudson, 209 N.J. 513, 529 (2012)). "The intent of the Legislature 'begins with the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning.'" Ibid. (quoting Hudson, supra, 209 N.J. at 529). "Absent a clear indication from the Legislature that it intended statutory language to have a special limiting definition, we must presume that the language used carries its ordinary and well-understood meaning." Id. at 262-63.

"[I]f a statute's plain language is ambiguous or subject to multiple interpretations, the Court 'may consider extrinsic evidence including legislative history and committee reports.'" State v. Frye, 217 N.J. 566, 575 (2014) (quoting State v. Marquez, 202 N.J. 485, 500 (2010)). Further, "[u]nder the 'doctrine of lenity,' if an analysis of statutory language, legislative history and other secondary sources fails to resolve a statutory ambiguity with respect to a criminal statute, that ambiguity is resolved in favor of the defendant." State v. McDonald, 211 N.J. 4, 18 (2012) (citing State v. Gelman, 195 N.J. 475, 482 (2008) (citing United States v. Bass, 404 U.S. 336, 348, 92 S. Ct. 515, 523, 30 L. Ed. 2d 488, 497 (1971))).

One ambiguity in the plain language of the Statute is whether the Legislature intended the same culpable mental state — "purposely" — that expressly applies to "subject[ing] [an officer] to contact with a bodily fluid," also applies to "throw[ing] a bodily fluid at" such an officer. N.J.S.A. 2C:12-13. The model jury charge recognizes this ambiguity, providing in a footnote,

> There is a question of statutory construction as to the applicable culpability element under N.J.S.A. 2C:12-13 for one who "throws" a bodily fluid. The absence of an explicitly stated culpability requirement in the first portion of the statute could support an argument that knowledge applies under N.J.S.A. 2C:2-2c(3),

but a majority of the Model Criminal Jury Charge Committee has concluded that the subsequent statutory reference to purpose requires that purpose be applied to all material elements of the offense under N.J.S.A. 2C:2-2c(1).

[Model Jury Charge (Criminal), "Aggravated Assault (Throwing Bodily Fluid at a Corrections Employee) (N.J.S.A. 2C:12-13)," n.1, (June 10, 2002) (the Model Charge).]

The Model Charge adopted the reasoning explained in its footnote and provides in relevant part:

In order for you to find the defendant guilty of this offense, the State must prove each of the following elements beyond a reasonable doubt:

. . . . []that the defendant purposely threw a bodily fluid at (insert name of victim) or otherwise purposely subjected (insert name of victim) to contact with a bodily fluid;

. . . .

A person acts purposely with respect to the nature of (his/her) conduct or a result thereof if it is a person's conscious object to engage in conduct of that nature or to cause such a result. A person acts purposely with respect to attendant circumstances if a person is aware of the existence of such circumstances or a person believes or hopes that they exist. One can be deemed to be acting purposely if one acts with design, with a purpose, with a particular object, if one really means to do what (he/she) does.

[Id. at 1-2 (emphasis added) (citing N.J.S.A. 2C:2-2(b)(1)).]

The footnote in the Model Charge relies upon the Criminal Code's general default provision governing culpability, N.J.S.A. 2C:2-2(c). "When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears." N.J.S.A. 2C:2-2(c)(1). On the other hand, when "no culpable mental state is expressly designated in a statute defining an offense," our Criminal Code provides the statute "should be construed as defining a crime" that requires knowing culpability. N.J.S.A. 2C:2-2(c)(3).

The scant legislative history of the Statute demonstrates the Legislature intended to broadly criminalize certain conduct.

> This bill is intended to protect the health and well-being of corrections and parole officers by designating the act of throwing bodily fluids at such officers an aggravated assault. The need to impose tough sanctions for this vile and disgusting act takes on greater urgency in an era when such fluids can (sic) may serve as the medium for the transmission of life-threatening diseases.
>
> [Statement to A. 1598 (February 29, 1996).]

Indeed, the Statute defines two different types of aggravated assault: 1) throwing bodily fluid at an officer, even if there is no contact; and 2) causing, in some other way, contact of

bodily fluid with the officer. However, nothing indicates the Legislature intended two different levels of culpability — knowing conduct on the one hand and purposeful conduct on the other — and chose only to include purposeful conduct in the Statute. "We decline to read into the statute language that the Legislature 'could have included . . . but did not.'" State v. Eldakroury, 439 N.J. Super. 304, 310 (App. Div.) (quoting Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 596 (2013)), certif. denied, 222 N.J. 16 (2015).

We conclude the Statute requires the State prove a defendant acted purposely, whether throwing bodily fluid at an officer or otherwise subjecting that officer to contact with bodily fluid. This interpretation is consistent with the general rules of construction in our Criminal Code, with which we presume the Legislature was entirely familiar. See State v. Nance, ___ N.J. ___, ___ (2017) (slip op. at 18) ("[W]hen ascertaining legislative intent, we can infer that the Legislature was 'familiar with its own enactments, with judicial declarations relating to them, and . . . passed or preserved cognate laws with the intention that they be construed to serve a useful and consistent purpose.'" (quoting State v. Greeley, 178 N.J. 38, 46 (2003))).

As it did in the Law Division, the State argues that even if the Statute requires purposeful conduct, the doctrine of transferred intent applies. In other words, it did not matter whether defendant intended to spit at the officer since she clearly intended to spit at her fellow inmate who was nearby, and defendant's bodily fluid came in contact with the officer as a result. We disagree.

The second part of the Statute proscribes a particular result, that is, the actor purposely subjected the officer to contact with a bodily fluid. N.J.S.A. 2C:2-3(b) provides:

> When the offense requires that the defendant purposely or knowingly cause a particular result, the actual result must be within the design or contemplation, as the case may be, of the actor, or, if not, the actual result must involve the same kind of injury or harm as that designed or contemplated and not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.

"Where an offense requires purpose, the result must be the kind of result designed by the actor[.]" Cannel, New Jersey Criminal Code Annotated, comment 4 on N.J.S.A. 2C:2-3 (2016-17).

The Criminal Code also provides that an actor is "not . . . relieved of responsibility for causing a result if the only difference between what actually occurred and what was designed

. . . is that a different person . . . was injured or affected or that a less serious or less extensive injury or harm occurred." N.J.S.A. 2C:2-3(d). "Th[is] principle of 'transferred intent' makes an actor criminally responsible for the result of his conduct, even though the person injured is not his intended victim." S.B., supra, 333 N.J. Super. at 243.

In S.B., we held the juvenile was not absolved of committing an assault upon his teacher, simply because he intended to kick another student and struck his teacher instead. Ibid. However, because the juvenile did not possess the specific intent to kick his teacher, he could not be adjudicated delinquent of aggravated assault under N.J.S.A. 2C:12-1(b)(5)(d), which elevates a simple assault committed upon certain educational officials to aggravated assault. S.B., supra, 333 N.J. Super. at 242-43. We rejected application of transferred intent to elevate the offense because "the only intent that [was] transferred [was] the intent to commit a simple assault." Id. at 244-45; see also Cannel, supra, comment 6 on N.J.S.A. 2C:2-3 ("[I]f the degree of crime is dependent on the identity of the victim, . . . the identity of the intended, not actual, victim is decisive.").

We need not decide hypothetically whether purposely spitting on someone, "throwing" bodily fluids "at" someone, or

A-2032-15T2

otherwise purposely causing a person to come into contact with a bodily fluid are offenses under our Criminal Code. For our purposes, it suffices to say that whatever that offense might be, the doctrine of transferred intent does not apply to elevate that conduct to an aggravated assault under N.J.S.A. 2C:12-13. A defendant does not violate the Statute unless his conduct was purposeful and the result was within his design.

IV.

Applying these principles, we consider the judge's decision on defendant's motion to dismiss the indictment.

"The trial court's decision denying defendant's motion to dismiss her indictment is reviewed for abuse of discretion." State v. Saavedra, 222 N.J. 39, 55 (2015) (citing Hogan, supra, 144 N.J. at 229). "[B]ecause grand jury proceedings are entitled to a presumption of validity," defendant bears the burden of demonstrating the prosecutor's conduct requires dismissal of the indictment. State v. Francis, 191 N.J. 571, 587 (2007) (citing State v. Engel, 249 N.J. Super. 336, 359 (App. Div.), certif. denied, 130 N.J. 393 (1991)).

"A prosecutor must charge the grand jury 'as to the elements of specific offenses.'" Eldakroury, supra, 439 N.J. Super. at 309 (quoting State v. Triestman, 416 N.J. Super. 195, 205 (App. Div. 2010)). "[A]n indictment will fail where a

prosecutor's instructions to the grand jury were misleading or an incorrect statement of law." Ibid. (quoting Triestman, supra, 416 N.J. Super. at 205). "However . . . nothing in the New Jersey Constitution demands 'a verbatim reading of applicable statutes or a recitation of all legal elements of each charge . . . .'" State v. Hogan, 336 N.J. Super. 319, 340 (App. Div.) (quoting State v. Laws, 262 N.J. Super. 551, 562 (App. Div.), certif. denied, 134 N.J. 475 (1993)), certif. denied, 167 N.J. 635 (2001).

In Treistman, supra, 416 N.J. Super. at 205, we also restated the prosecutor's obligation, in some circumstances, to charge the grand jurors as to specific exculpatory defenses. As Judge Baime observed nearly twenty-five years ago, "a prosecutor's obligation to instruct the grand jury on possible defenses is a corollary to his responsibility to present exculpatory evidence." Hogan, supra, 336 N.J. Super. at 341. "[I]t is only when the facts known to the prosecutor clearly indicate or clearly establish the appropriateness of an instruction that the duty of the prosecution arises." Id. at 343-44 (citing State v. Choice, 98 N.J. 295, 299 (1985)). "[A]n indictment should not be dismissed unless the prosecutor's error was clearly capable of producing an unjust result. This standard can be satisfied by showing that the grand jury would

have reached a different result but for the prosecutor's error." Id. at 344.

Here, as in Eldakroury, we deal with the adequacy of the prosecutor's instructions to the grand jury. The defendant in Eldakroury was "accused of operating a sexually oriented business . . . within 1000 feet of a residential zone," in violation of N.J.S.A. 2C:34-7(a). Eldakroury, supra, 439 N.J. Super. at 306. The prosecutor instructed the grand jury that the State needed to prove the defendant knowingly operated the business, but did not have to prove he ran the business knowing it was located within the residential zone. Id. at 307. We affirmed the trial court's dismissal of the indictment, concluding "the State's instruction to the jury was 'blatantly wrong' and, in effect, relieved the State from having to establish defendant's mens rea as to a material element of the offense." Id. at 310.

In this case, the prosecutor similarly failed to define a material element of the crime for the grand jurors, i.e., that defendant purposely spat at the officer or otherwise purposely subjected the officer to contact with a bodily fluid. Certainly, the evidence produced before the grand jurors failed to demonstrate defendant acted "with purpose" as to the officer. Given the little evidence actually produced before the grand

jurors, we must conclude omitting instructions on the culpability element of the crime "was clearly capable of producing an unjust result." Hogan, supra, 336 N.J. Super. at 344.

We note further that even if the State provides appropriate instructions to the grand jury, it must produce "some evidence establishing each element of the crime to make out a prima facie case." Saavedra, supra, 222 N.J. at 57 (quoting State v. Morrison, 188 N.J. 2, 12 (2006)). Without full knowledge of the State's case, we will not speculate whether it can establish the essential elements of N.J.S.A. 2C:12-13 before the grand jury.

V.

We conclude the judge mistakenly exercised his discretion by not dismissing the indictment because the State failed to properly charge the grand jury on the elements of N.J.S.A. 2C:12-13. We therefore reverse defendant's judgment of conviction, vacate the sentence imposed and dismiss the indictment without prejudice to the State's ability to represent the matter to the grand jury.[4]

In order to provide guidance should the State seek to re-indict defendant, we consider whether the inmate statements and

---

[4] As a result, we need not consider the arguments raised in defendant's second point on appeal.

the disciplinary charge lodged against defendant must be presented to the grand jurors. The prosecutor's duty to present certain evidence to the grand jury "arises only if the evidence satisfies two requirements: it must directly negate guilt and must also be clearly exculpatory." Hogan, supra, 144 N.J. at 237.

The evidence in the appellate record "directly negates" defendant's guilt, because it "squarely refutes an element of the crime in question," i.e., purposeful conduct. Ibid. (emphasis omitted). However, determining whether it is "'clearly exculpatory' requires an evaluation of the quality and reliability of the evidence. The exculpatory value of the evidence should be analyzed in the context of the nature and source of the evidence, and the strength of the State's case." Ibid. Contradictory eyewitness testimony, or self-serving statements of denial are not "'clearly exculpatory,' and need not be revealed to the grand jury." Id. at 238.

The three statements of defendant's fellow inmates, although consistently asserting defendant intended to spit at one of them and not the officer, are internally inconsistent as to other details of the incident. We recognize that the discovery contained in the appellate record may not be the full extent of the State's evidence against defendant, and we have no

knowledge of whether the State possesses additional evidence. It follows, we cannot assess from this limited record any potential bias on the part of these witnesses or the overall "strength of the State's case." Id. at 237.

We therefore act, as the Court advised, with "substantial caution" in this regard, id. at 238, and leave final resolution of the issue to the Law Division. Should the State represent the matter and secure a new indictment, and should defendant again move to dismiss on this ground, the court will be in the best position to apply Hogan's standards to the record as it then exists.

Reversed. We vacate defendant's conviction and dismiss the indictment without prejudice to the State's ability to represent the matter to a properly instructed grand jury.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION