**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1064-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

XAVIER EPPS,

     Defendant-Appellant.

_____

Argued May 22, 2023 – Decided April 2, 2024

Before Judges Haas and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 20-01-0034.

Cody Tyler Mason, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Cody Tyler Mason, of counsel and on the briefs).

Regina M. Oberholzer, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Regina M. Oberholzer, of counsel and on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

On January 14, 2020, defendant was charged in a Hudson County indictment with first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1) and N.J.S.A. 2C:11-3(a) (count one); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1) (count two); second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1) (count three); and second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1) (count four).

The charges stemmed from an October 14, 2019, shooting on a Jersey City sidewalk that was caught on surveillance video. The surveillance footage depicted the shooter firing at a fleeing man after the shooter was shoved to the ground during a melee immediately preceding the shooting. After the shooting, the shooter left the area in a light-colored sedan. Other than minor property damage, no resulting injuries were reported to law enforcement, and no witnesses were identified. However, based on a "Be On The Lookout" (BOLO) flyer containing still images of the shooter from the surveillance footage, the next day, a Hudson County Prosecutor's Office (HCPO) detective familiar with defendant identified defendant as the shooter. The following day, defendant was arrested by Jersey City detectives. During his arrest, defendant was wearing the

same shoes depicted in the surveillance video, and a subsequent search of defendant's vehicle revealed a jacket matching the one worn by the shooter in the video.

Defendant moved to exclude the HCPO detective's identification testimony and dismiss count one of the indictment. After both motions were substantively denied, defendant entered a negotiated guilty plea to count one, as amended to charge second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1). During the June 8, 2021, plea hearing, defendant admitted that he got angry during the fight and fired his gun in an attempt to cause serious bodily injury to the individual responsible. On November 5, 2021, defendant was sentenced in accordance with the plea agreement to six years in prison, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and assessed various fines and penalties. A conforming judgment of conviction was entered on November 10, 2021, from which defendant now appeals.

On appeal, defendant raises the following points for our consideration:

> POINT I
>
> THE DETECTIVE'S IDENTIFICATION SHOULD HAVE BEEN EXCLUDED AS AN IMPROPER LAY OPINION BECAUSE HE LACKED PERSONAL KNOWLEDGE OF DEFENDANT'S APPEARANCE

3

AND JURORS WOULD HAVE BEEN EQUALLY CAPABLE OF DETERMINING THE ISSUE OF IDENTIFICATION.

POINT II

COUNT ONE OF THE INDICTMENT SHOULD HAVE BEEN DISMISSED BECAUSE THE PROSECUTOR FAILED TO PROPERLY INSTRUCT THE GRAND JURY ON THE REQUISITE MENTAL STATE[] FOR ATTEMPTED MURDER AND BECAUSE THE INDICTMENT DID NOT PROVIDE SUFFICIENT NOTICE.

   A.   The Prosecutor Failed To Properly Instruct The Grand Jury That Attempted Murder Requires The Purpose To Cause Death.

   B.   The Indictment Did Not Provide Sufficient Notice Because It Did Not Include Identifying Information About The Victim.

POINT III

RESENTENCING IS REQUIRED BECAUSE THE COURT CLEARLY ERRED WHEN IT MISCHARACTERIZED DEFENDANT'S PRIOR RECORD, FAILED TO FIND MITIGATING FACTOR ELEVEN, DID NOT ADDRESS OR FIND MITIGATING FACTORS THREE AND FOUR, AND IMPOSED $50 IN IMPROPER FINES.

   A.   Resentencing Is Required Because the Court Improperly Found Aggravating Factors Three, Six, and Nine,

4

and Erroneously Failed to Consider or Find Three Mitigating Factors.

B. The Court Wrongly Imposed a[] $100 VCCB Assessment.

As a threshold matter, we reject the State's contention that defendant entered a non-conditional plea and thereby waived the substantive arguments raised in Points I and II. Under Rule 3:9-3(f), "a defendant may enter a conditional plea of guilty reserving on the record the right to appeal from the adverse determination of any specified pretrial motion." The reservation "must be placed 'on the record'" and "must also specifically be approved by the State and by the court." State v. Davila, 443 N.J. Super. 577, 586 (App. Div. 2016) (quoting Rule 3:9-3(f)).

However, the form of the consent required to validate a conditional plea "need not be express or explicit." Pressler & Verniero, Current N.J. Court Rules, cmt. 7 on R. 3:9-3(f) (2024); see State v. Matos, 273 N.J. Super. 6, 15 (App. Div. 1994) (concluding that prosecutor's failure to sign plea form did not signify lack of consent to reservation where prosecutor "did not take exception to defense counsel's statement that there would be appeals made from the pretrial motions" and "[t]he judge took particular note that the plea agreement reserved defendant's right to appeal the pretrial motions"); see also State v. Alexander,

310 N.J. Super. 348, 351 n.2 (App. Div. 1998) (rejecting the State's argument that defendant's guilty plea "waived his right to appeal from th[e] order" "denying his motion to dismiss the indictment" where the prosecutor raised no objection to "defense counsel's assertion at sentencing that defendant intended to appeal from the order").

Here, although there was no mention of the conditional nature of the plea at the plea hearing or at sentencing, defendant's typed response to question 4(e) on the plea form clearly, legibly, and expressly reserved the right to appeal from the trial judge's denial of his "Wade"[1] motion and his "Motion to Dismiss" the indictment. The plea form memorializing the plea agreement was signed by the prosecutor, defense counsel, and defendant, and the judge reviewed the form before accepting the plea. In fact, during the plea colloquy, the judge said nothing that was inconsistent with the conditional nature of the plea and only advised defendant that "[a]ny motions filed and not ruled upon" would "be marked as withdrawn."

---

[1] United States v. Wade, 388 U.S. 218 (1967). Defendant challenged the admissibility of the detective's lay opinion testimony under N.J.R.E. 701 as part and parcel of the Wade motion that challenged the admissibility of the identification on other grounds. On appeal, defendant has abandoned the other grounds.

A-1064-21

Although a verbal acknowledgement of the reservation does not appear in the record, under the circumstances, denying appellate review of defendant's failed motions "would effectively thwart the 'reasonable expectations' on which he pled guilty." State v. Nicolas, 461 N.J. Super. 207, 210-11 (App. Div. 2019) (quoting State v. Bellamy, 178 N.J. 127, 134-35 (2003)). Thus, "[f]airness dictates we address [the points] because [defendant] anticipated as much when he agreed to plead guilty." Id. at 211; see State v. J.M., 182 N.J. 402, 410 (2005) ("[I]n limited situations where it would result in an injustice to strictly adhere to the requirements of [Rule 3:9-3(f)], the rule will not be enforced." (citing State v. Gonzalez, 254 N.J. Super. 300, 304 (App. Div. 1992))).

That being said, we have considered defendant's arguments raised in Points I and II on the merits in light of the record and applicable legal principles. We reject the arguments and affirm defendant's conviction. However, based on the arguments in Point III, we vacate defendant's sentence and remand for resentencing.

I.

In Point I, defendant argues that the trial judge erred in denying his motion to bar the detective's identification testimony because the testimony fails to

A-1064-21

satisfy either prong of N.J.R.E. 701 governing the admission of lay opinion testimony.

During an evidentiary hearing conducted on August 19, 2020, HCPO Detective Kenneth Sheehan testified for the State that the morning after the shooting, he identified defendant from the BOLO flyer that was created from the surveillance video. According to Sheehan, although he had never personally met defendant, he recognized him from an investigation he had conducted "around the summer of 2018" concerning "a new feud developing in Jersey City." At the time, Sheehan was assigned to the Gang Intelligence Unit, a unit that "investigate[d] violent crimes" and "gather[ed] intelligence" on violent factions "through social media."

Sheehan testified that as part of the 2018 investigation, he began "identify[ing] people's Facebook photos," which eventually led him to a Facebook account under the name "Yung Versal." At some point, Sheehan became aware that the individual utilizing the Facebook account "Yung Versal" was defendant. Although Sheehan knew defendant's legal name prior to viewing the BOLO flyer, he could not "recall exactly when or how" he became aware of defendant's identity as "Yung Versal."

A-1064-21

Sheehan explained that his office typically identified individuals through social media using "various means," including "informants," "the names on the pages," "birth dates," and other "investigative platforms," including "report systems, search databases, [and] mug shot systems." Although defendant's birth date appeared on "Yung Versal's" Facebook page, Sheehan could not recall exactly which investigative platform led to the identification of defendant's Facebook page.

Sheehan also recalled seeing an earlier "video of [defendant] chasing somebody" through the area where the shooting had occurred, but could not recall when he had seen it. Sheehan acknowledged that there was "no investigatory report" memorializing the earlier incident, and defendant had not been previously identified as "a suspect" or "a person of interest" in connection with any incident. Sheehan also confirmed that he had never seen defendant "out on the street," had never seen defendant "walk," and had never "interviewed" defendant.

Nonetheless, after reviewing the entire surveillance footage of the shooting to confirm his identification of the shooter, Sheehan contacted a dispatcher to look up defendant's motor vehicle records and learned that a silver Lexus was registered to defendant. Sheehan then analyzed defendant's

9

Facebook page and located a photograph of defendant posted on March 10, 2019, wearing "sneakers [that] appeared . . . to be the same sneakers" the shooter in the BOLO flyer was wearing. Sheehan also observed a picture of a "vehicle that appear[ed] to match the vehicle from the video of the shooting, a silver Lexus ES350," as well as "a picture of a large dent on the driver's side of a silver vehicle," similar to the "large dent" in the vehicle at the scene of the shooting in the video. Sheehan testified that "[t]he last thing [he] did" with respect to the shooting investigation "was preserve the Facebook photograph[s] for evidence purposes."

On September 16, 2020, the judge issued an order granting in part and denying in part defendant's motion to bar Sheehan's identification testimony. In an accompanying written opinion, the judge began by recounting Sheehan's testimony, which the judge found "credible" based on his "opportunity to view [Sheehan] while testifying," as well as the fact that "[Sheehan] was candid about his knowledge and acknowledged being unable to recollect certain things, such as how he connected the Yung Versal page to [d]efendant's name." Then, relying primarily on State v. Lazo, 209 N.J. 9 (2012), the judge concluded that "Sheehan may testify as to his belief that the actor in the BOLO and surveillance footage is the same actor from the Yung Versal Facebook page," but could not

"opine on whether [d]efendant is the man in the BOLO and surveillance footage."

In support, the judge pointed out that "the State [did] not plan to present any eyewitness testimony identifying the alleged actor." The judge also acknowledged that "Sheehan's familiarity with [d]efendant's appearance [was] not based on any in-person interactions with him." However, the judge explained that notwithstanding Sheehan's inability to remember "why or how he connected the [Facebook] page to [d]efendant," Sheehan credibly testified that he "recognize[d] the man in the BOLO as the man from the Yung Versal page based on his appearance and shoes he was wearing." According to the judge, Sheehan "also believed the silver vehicle in the footage matched the vehicle in photos posted to the Facebook page." Noting that "[t]he Court's language in Lazo focuses on 'prior knowledge,'" the judge concluded that Sheehan's identification testimony would not constitute impermissible lay opinion testimony because "Sheehan had prior knowledge and familiarity with Yung Versal's Facebook page," having viewed it "multiple times" "as part of his duties prior to the issuance of the BOLO and the commission of the instant offense."[2]

_____

[2] During oral argument, the judge pointed out that case law had not required "that prior interaction ha[d] to be in person." The judge commented that he had

"[A] trial court's evidentiary rulings are entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment." State v. Singh, 245 N.J. 1, 12 (2021) (alteration in original) (quoting State v. Nantambu, 221 N.J. 390, 402 (2015)). "Under that standard, an appellate court should not substitute its own judgment for that of the trial court, unless 'the trial court's ruling "was so wide of the mark that a manifest denial of justice resulted."'" State v. Brown, 170 N.J. 138, 147 (2001) (quoting State v. Marrero, 148 N.J. 469, 484 (1997)). "[W]here the trial court fails to apply the proper legal standard in evaluating the admissibility of evidence, we review the evidentiary ruling de novo." State v. Trinidad, 241 N.J. 425, 448 (2020). Still, not every mistaken evidentiary ruling will "lead to a reversal of a conviction. Only those that have the clear capacity to cause an unjust result will do so." State v. Garcia, 245 N.J. 412, 430 (2021).

Lay opinion testimony is admissible subject to two conditions set forth in N.J.R.E 701. First, the lay witness's opinion must be "rationally based on the witness' perception;" and second, the opinion must "assist in understanding the witness' testimony or determining a fact in issue." N.J.R.E. 701. To satisfy the

---

"never met" either "Joe Namath" or "Eli Manning" but would be able to identify them based on his familiarity with them from "television and . . . print" media.

first condition, the perception prong, the "witness must have actual knowledge, acquired through his or her senses, of the matter to which he or she testifies." State v. Sanchez, 247 N.J. 450, 466 (2021) (quoting State v. LaBrutto, 114 N.J. 187, 197 (1989)).

Thus, "N.J.R.E. 701's first prong . . . requires only that a lay witness testify based on knowledge personally acquired through the witness's own senses, rather than on the hearsay statements of others." Id. at 469. "The witness need not have witnessed the crime or been present when the photograph or video recording was made in order to offer admissible testimony." Ibid. Still, the testimony must be "based on the witness's actual perception of the defendant or the piece of evidence in question." State v. Higgs, 253 N.J. 333, 366 (2023).

The second condition, the helpfulness prong, limits lay opinion testimony to that which will "assist the trier of fact either by helping to explain the witness's testimony or by shedding light on the determination of a disputed factual issue." Sanchez, 247 N.J. at 469 (quoting Singh, 245 N.J. at 15). The second condition therefore precludes "lay opinion on a matter 'as to which the jury is as competent as [the witness] to form a conclusion.'" Id. at 469-70 (alteration in original) (quoting State v. McLean, 205 N.J. 438, 459 (2011)).

Recently, our Supreme Court reviewed several decisions that applied N.J.R.E. 701's perception prong to a law enforcement officer's testimony "identifying the defendant as the individual depicted in a photograph or video relating to the offense" charged:

> In State v. Lazo, we excluded the opinion testimony of a law enforcement officer unacquainted with a defendant who stated that he included a photo of the defendant in a photo array "[b]ecause of his similarities to the suspects that were described by the victim." [209 N.J. at 19] (alteration in original). We held that "[n]either a police officer nor another witness may improperly bolster or vouch for an eyewitness' credibility and thus invade the jury's province." Id. at 24.
>
> In State v. Singh, however, we affirmed the admission of an arresting officer's lay opinion that the sneakers worn by the suspect in surveillance video looked similar to sneakers worn by the defendant at the time of his arrest, given the officer's direct observation of the defendant's sneakers. 245 N.J. at 17-18. We held in Singh that the officer's reference to the suspect in the video as "the defendant" was improper in light of the dispute about the identity of the suspect, but that the reference was "fleeting" and did not amount to plain error. Ibid.
>
> In Sanchez, we reversed the trial court's exclusion of the defendant's parole officer's identification of the defendant in a photograph taken from surveillance video, given the parole officer's many in-person meetings with the defendant and the capacity of her identification testimony to assist the jury. 247 N.J. at 469-75. There, the parole officer's identification

14

derived from her personal perception, which enabled her to identify the defendant in the surveillance photograph "more accurately than a jury could." Id. at 474.

. . . .

In Higgs, we barred the lay opinion of a law enforcement officer who was not present at a shooting and testified that an object depicted in a surveillance video appeared to be a firearm. 253 N.J. at 365-67. Applying N.J.R.E. 701's "perception" prong, we noted that the detective "had no prior interaction or familiarity with either defendant or the firearm in question" and that "[h]is testimony was based entirely on his lay opinion from watching the video." Id. at 365. We reasoned that "[t]he video was in evidence and the jury should have been permitted to view it slowly, frame by frame, to determine for themselves what they saw on screen, without the influence of opinion testimony by an officer who was not there at the time." Id. at 367. We held that the officer's testimony had invaded the jury's province. Id. at 366-67.

[State v. Allen, 254 N.J. 530, 544-46 (2023) (first, third, fourth, and fifth alterations in original).]

In Sanchez, the Court identified several factors courts should consider when evaluating whether N.J.R.E. 701's helpfulness prong has been satisfied, including "the nature, duration, and timing of the witness's contacts with the defendant," 247 N.J. at 470, "whether the defendant disguised his or her appearance during the offense or altered his or her appearance before trial," id. at 472 (quoting United States v. Beck, 418 F.3d 1008, 1015 (9th Cir. 2005)),

"whether there are additional witnesses available to identify the defendant at trial," ibid. (quoting Lazo, 209 N.J. at 23), and "the quality of the photograph or video recording at issue," id. at 473. "[O]ther considerations may be relevant to the question of whether lay opinion testimony will assist the jury in a given case" and "no single factor is dispositive." Id. at 473-74.

The Sanchez Court elaborated that "when the witness has had little or no contact with the defendant, it is unlikely that his or her lay opinion testimony will prove helpful." Id. at 471. On the other hand, "if there has been a change in the defendant's appearance since the offense at issue, law enforcement lay opinion identifying the defendant may be deemed helpful to the jury." Id. at 472. The Sanchez Court also cautioned that "law enforcement lay opinion identifying a defendant in a photograph or video recording 'is not to be encouraged, and should be used only if no other adequate identification testimony is available to the prosecution.'" Ibid. (quoting United States v. Butcher, 557 F.2d 666, 670 (9th Cir. 1977)). Additionally, "[i]f the photograph or video recording is so clear that the jury is as capable as any witness of determining whether the defendant appears in it, that factor may weigh against a finding that lay opinion evidence will assist the jury." Id. at 473.

Here, contrary to defendant's contention, Sheehan's proffered testimony satisfied both prongs of N.J.R.E. 701. Although Sheehan had never met defendant in person, he previously observed the photographs on the Yung Versal Facebook page, which he identified as defendant, thereby satisfying the perception prong. Critically, Sheehan was familiar with the Yung Versal Facebook profile from prior investigations, including an incident involving a video of defendant chasing someone through the area where the shooting had occurred. "The witness need not have witnessed the crime or been present when the photograph or video recording was made in order to offer admissible testimony." Id. at 469. Sheehan's identification of defendant in the BOLO flyer and surveillance video as the person depicted in defendant's Facebook page under the pseudonym Yung Versal was "rationally based on [his] perception" as required under N.J.R.E. 701(a).

Based on the judge's ruling, Sheehan could not opine that defendant was the man in the BOLO and surveillance footage, but only that he believed the person in the BOLO and surveillance footage was the same person as the person in the photographs on the Yung Versal Facebook page. As such, Sheehan's testimony satisfied the second prong by assisting the jury "in understanding [his] testimony or determining a fact in issue." N.J.R.E. 701(b). Otherwise, the jury

17

would be left to speculate. See State v. Branch, 182 N.J. 338, 351 (2005) ("[A] police officer may not imply to the jury that he possesses superior knowledge, outside the record, that incriminates the defendant."). Simply because the jury may have been able to evaluate whether the photographs on the Yung Versal Facebook page were similar to those in the BOLO and surveillance video does not mean that Sheehan's testimony "was unhelpful." Singh, 245 N.J. at 20. Nor does it mean that Sheehan's testimony "usurped the jury's role." Ibid. Indeed, "the jury was free to discredit" Sheehan's testimony and find that the photographs on the Yung Versal Facebook page were dissimilar to those in the BOLO and surveillance video. Ibid.

Considering the factors delineated in Sanchez, we are satisfied that N.J.R.E. 701's helpfulness requirements are met. Although "law enforcement lay opinion identifying a defendant in a photograph or video recording 'is not to be encouraged,'" it may be used "'if no other adequate identification testimony is available to the prosecution,'" as is the case here. Sanchez, 247 N.J. at 472 (quoting Butcher, 557 F.2d at 670). "That factor favors a holding that [the] lay opinion testimony would assist the jury." Id. at 474. Additionally, "lay witness testimony is permissible where the witness has had 'sufficient contact with the defendant to achieve a level of familiarity that renders the lay opinion helpful.'"

18

Beck, 418 F.3d at 1015 (quoting <u>United States v. Henderson</u>, 241 F.3d 638, 650 (9th Cir. 2000)). Although Sheehan had never met defendant before the shooting and had never seen him in person, he was familiar with defendant from prior investigations in which he gathered intelligence on social media of violent gang factions, and his prior familiarity was sufficient to enable him to compare the BOLO and surveillance video with the Yung Versal Facebook photos more accurately than a jury could.

In challenging the testimony, defendant stresses the absence of any prior in-person meeting and the gaps in Sheehan's recollection, including his inability to recall when or how his attention was drawn to the Yung Versal Facebook page, how many times he had viewed the Yung Versal Facebook page, and when he saw the video of defendant chasing someone in the area. However, "the extent of a witness's opportunity to observe the defendant goes to the weight of the testimony, not to its admissibility," and "cross-examination exists to highlight potential weaknesses in lay opinion testimony." <u>Ibid.</u>

In <u>United States v. LaPierre</u>, 998 F.2d 1460, 1465 (9th Cir. 1993), the court determined it was error to admit the lay opinion identification testimony of a police officer who identified the defendant in robbery surveillance photographs where the testimony was not helpful to the jury. The police officer

19

had never met the defendant before the robbery and had never seen the defendant "in person." Ibid. Instead, the police officer's knowledge of the defendant was based on his review of defendant's photographs and the description of witnesses who knew the defendant. Ibid. The court commented that although it could "imagine a hypothetical scenario in which a witness who knew a defendant only through photographs nonetheless had become sufficiently familiar with his appearance to give lay opinion testimony of this sort," this was "not such a case." Ibid. Instead, the court reasoned that the police officer's level of familiarity with the defendant's appearance fell "short of that required by our cases and by Rule 701's requirement of helpfulness." Ibid.

In contrast, here, although Sheehan knew defendant only through social media, nonetheless, under the circumstances, he had sufficient familiarity with defendant's appearance to satisfy the requirements of N.J.R.E. 701. Accordingly, we discern no abuse of discretion in the judge admitting Sheehan's lay opinion testimony that the shooter in the BOLO and the surveillance video appeared to be the same person as the photographs in Yung Versal's Facebook page.[3]

_____

[3] Because the surveillance video was not played at the evidentiary hearing, it was not relied upon by the judge. However, the still photos in the BOLO flyer

## II.

In Point II, defendant argues the judge erred in denying his motion to dismiss count one of the indictment for two reasons. First, defendant asserts the prosecutor improperly instructed the grand jury on the elements of attempted murder. Second, defendant contends by failing to specify or name the intended victim, the indictment was not sufficiently detailed and did not provide sufficient notice.[4]

On January 2, 2021, defendant moved to dismiss count one of the indictment on these two grounds. On April 5, 2021, following oral argument, the judge issued an order and written opinion denying defendant's motion. In his written decision, the judge first addressed the faulty grand jury instruction

---

are "neither so blurry that the subject's features are indistinguishable, nor so clear that jurors unacquainted with defendant" could make a comparison as accurately as Sheehan. Sanchez, 247 N.J. at 475. Further, because "[t]he record . . . does not indicate any . . . change in defendant's appearance," that factor "does not support or undermine a finding that N.J.R.E. 701's second prong is satisfied in this case." Id. at 474.

[4]  We reject the State's contention that the appeal of the judge's denial of defendant's motion to dismiss count one is moot. We acknowledge that an appeal of a pre-trial motion "presents a moot, non-justiciable question" if the "pre-trial motion only affects a dismissed count[.]" Davila, 443 N.J. Super. at 585. However, this appeal relates to a count to which defendant pled guilty after it was amended. Therefore, the appeal is not moot.

A-1064-21

claim, recounting the prosecutor's attempted murder instruction to the grand jury

as follows:

> I'm going to read you the definitions of all of the charges. So, attempted murder [N.J.S.A.] 2C:5-1.
>
>> "A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
>>
>> Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be."
>
> That's the portion for attempt. Now, murder, the charge reads under [N.J.S.A.] 2C:11-3.
>
>> "Criminal homicide constitutes murder when:
>>
>> The actor purposely causes death or serious bodily injury resulting in death; or
>>
>> The actor causes death or serious bodily injury resulting in death."
>
> So, what that means, attempted murder. So you'd combine those two. So, it is the attempt to <u>purposely or knowingly</u> cause death or serious bodily injury. Okay? Does anyone have questions about the law for attempted murder? (No verbal response from the Grand Jury).
>
> [(Emphasis added).]

A-1064-21

The judge observed that by "combining the 'purposefully' and 'knowingly' in th[e] concluding paragraph," the prosecutor committed "an error" because "[p]ursuant to N.J.S.A. 2C:5-1[,] an individual may only be found guilty of an attempted crime if they did so purposefully, not knowingly." Nevertheless, citing State v. Triestman, 416 N.J. Super. 195, 205 (App. Div. 2010), the judge found that the prosecutor's mistake "d[id] not rise to the level that the instructions were 'blatantly wrong' meriting a dismissal," particularly since prior to the misstatement, the prosecutor had accurately instructed the grand jury on the elements of attempt and the grand jurors asked no questions indicating there was no confusion.

Turning to defendant's argument that the indictment was defective by failing to identify the intended victim of the shooting, the judge explained that "the grand jury heard testimony that [d]efendant was captured on video engaging in a verbal confrontation with [the v]ictim which then became a physical altercation." According to the judge, defendant ultimately "discharged [his] weapon in [the v]ictim's direction in close proximity." Based on the evidence, the judge found that "[w]hile the identity of the [v]ictim is unknown, [d]efendant's use of a deadly weapon raise[d] a permissive inference of his intent to kill." Therefore, the judge rejected defendant's claim because "[t]he grand

jury had the opportunity to make this inference" and the State thereby "established a prima facie case to support the charge of purposely attempting to cause the death of another."

"A trial court's denial of a motion to dismiss an indictment is reviewed for abuse of discretion." State v. Tucker, 473 N.J. Super. 329, 341 (App. Div. 2022) (quoting State v. Twiggs, 233 N.J. 513, 544 (2018)). "In accordance with that 'deferential standard,' the trial court's 'decision should be reversed on appeal only [if] it clearly appears that the exercise of discretion was mistaken.'" State v. Bell, 241 N.J. 552, 561 (2020) (alteration in original) (citation omitted) (first quoting State v. Williams, 240 N.J. 225, 234 (2019); and then quoting State v. Abbati, 99 N.J. 418, 436 (1985)). "However, our review of a trial judge's legal interpretations is de novo." State v. Eldakroury, 439 N.J. Super. 304, 309 (App. Div. 2015).

Trial courts "should dismiss an indictment '"only on the clearest and plainest ground," and only when the indictment is manifestly deficient or palpably defective.'" Twiggs, 233 N.J. at 531-32 (quoting State v. Hogan, 144 N.J. 216, 228-29 (1996)). "[A] deficiency premised upon alleged prosecutorial misconduct does not require dismissal of an indictment '[u]nless the prosecutor's misconduct . . . is extreme and clearly infringes upon the [grand] jury's decision-

making function.'" Bell, 241 N.J. at 560 (alterations and omission in original) (quoting State v. Murphy, 110 N.J. 20, 35 (1988)).

As such, "an indictment will fail where a prosecutor's instructions to the grand jury were misleading or an incorrect statement of law." Tucker, 473 N.J. Super. at 344 (quoting Triestman, 416 N.J. Super. at 205). That said, merely "[i]ncomplete or imprecise grand-jury instructions do not necessarily warrant dismissal of an indictment; rather, the instructions must be 'blatantly wrong.'" Triestman, 416 N.J. Super. at 205 (quoting State v. Hogan, 336 N.J. Super. 319, 344 (App. Div. 2001)). "'[B]ecause grand jury proceedings are entitled to a presumption of validity,' defendant bears the burden of demonstrating the prosecutor's conduct requires dismissal of the indictment." State v. Majewski, 450 N.J. Super. 353, 365 (App. Div. 2017) (alteration in original) (quoting State v. Francis, 191 N.J. 571, 587 (2007)).

Guided by these principles, we discern no abuse of discretion in the judge's refusal to dismiss count one based on the prosecutor's error in instructing the grand jurors. Defendant challenges the judge's ruling, arguing that by including "references to serious bodily injury" in her instruction, "the prosecutor provided three contradictory and inaccurate theories of guilt, all of which would

have allowed the jury to indict without finding that [defendant] had the requisite purpose to kill."

"A prosecutor must charge the grand jury 'as to the elements of specific offenses.'" Eldakroury, 439 N.J. Super. at 309 (quoting Triestman, 416 N.J. Super. at 205). Here, the prosecutor read to the grand jury the elements of criminal attempt, N.J.S.A. 2C:5-1(a)(1), as well as the statutory definition of murder, N.J.S.A. 2C:11-3(a)(1) and (2). Both recitations preceded her completed instruction on attempted murder, which conflated both definitions and erroneously referenced both "purposely" and "knowingly" as an element of attempted murder.

However, "imprecise grand-jury instructions do not necessarily warrant a dismissal of an indictment." Triestman, 416 N.J. Super. at 205. Viewed in context, the prosecutor's error is not so "'extreme'" such that it "'clearly infringes upon the [grand] jury's decision-making function.'" Bell, 241 N.J. at 560 (alteration in original) (quoting Murphy, 110 N.J. at 35); see also Majewski, 450 N.J. Super. at 366 (holding that the prosecutor "omitting instructions on the culpability element of the crime" warranted dismissal of the indictment particularly since "the evidence produced before the grand jurors failed to demonstrate defendant acted 'with purpose'"); Eldakroury, 439 N.J. Super. at

26

310 (holding that the prosecutor's instruction was "blatantly wrong" where he affirmatively told the grand jury that the State did not need to prove mens rea as to a material element of the offense).

Indeed, defendant was charged with conduct that would have readily supported an inference of the requisite intent. See Model Jury Charges (Criminal), "Attempted Murder (N.J.S.A. 2C:5-1/N.J.S.A. 2C:11-3(a)(1))" (approved Dec. 7, 1992); see also State v. Thomas, 76 N.J. 344, 357 (1978) ("[T]he use of a deadly weapon raises an inference that there was an intent to kill[.]"). Therefore, we hew to our deferential standard of review in affirming the judge's ruling. Bell, 241 N.J. at 561.

Defendant also argues that the prosecutor's definition of attempt was inherently flawed because she mistakenly charged the jury with attempt by impossibility, N.J.S.A. 2C:5-1(a)(1), rather than attempt by substantial step, N.J.S.A. 2C:5-1(a)(3). "However . . . nothing in the New Jersey Constitution demands 'a verbatim reading of applicable statutes or a recitation of all legal elements of each charge . . . .'" Majewski, 450 N.J. Super. at 365 (omissions in original) (quoting Hogan, 336 N.J. Super. at 340). Moreover, the indictment specifically charged defendant with N.J.S.A. 2C:5-1(a)(1), which is what the prosecutor read to the grand jury.

Defendant argues further that the indictment was deficient and should have been dismissed for lack of specificity. According to defendant, "the indictment did not provide any detail about the victim or surrounding incident," leaving him unable to "prepare a defense or ensure that he was not convicted of an offense for which he was not indicted."

"The purpose[s] of an indictment are: to enable a defendant to know that against which he must defend; to prevent an accusation in derogation of our interdiction of double jeopardy; and to preclude substitution by a trial jury of an offense for which the grand jury has not indicted." State v. Spano, 128 N.J. Super. 90, 92 (App. Div. 1973). Consequently, at a minimum, all indictments must contain "a written statement of the essential facts constituting the crime charged." R. 3:7-3(a). Indeed, the indictment must "inform the defendant of the offense charged against him, so that he may adequately prepare his defense," State v. LeFurge, 101 N.J. 404, 415 (1986) (quoting State v. Lefante, 12 N.J. 505, 509 (1953)), and "must be sufficiently specific" both "to enable the defendant to avoid a subsequent prosecution for the same offense" and "'to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge,'" ibid. (quoting State v. Boratto, 80 N.J. 506, 519 (1979)).

To meet those criteria, "the State must present proof of every element of an offense to the grand jury and specify those elements in the indictment." State v. Fortin, 178 N.J. 540, 633 (2004). Still, "[a] valid indictment may not simply allege the 'essential elements of the offense;' it must also allege specific facts that satisfy those elements." State v. Jeannotte-Rodriguez, 469 N.J. Super. 69, 103 (App. Div. 2021) (alteration in original) (quoting United States v. Menendez, 137 F. Supp. 3d 688, 706 (D.N.J. 2015)). Indeed, "[a]s a general rule, '[t]he charging instrument must include a satisfactory response to the questions of who . . . , what, where, and how.'" Ibid. (omission and second alteration in original) (quoting 5 Wayne R. LaFave et al., Criminal Procedure, § 19.3(c) (4th ed. 2020)). That said, "[w]hat constitutes fair notice depends on the circumstances" of each case. Id. at 104.

Count one of the indictment alleged that defendant "purposely did attempt to cause the death of another contrary to the provisions of N.J.S.A. 2C:5-1a(1) and N.J.S.A. 2C:11-3a." Defendant challenges the State's failure to identify a victim in count one, arguing it resulted in the omission of an "essential fact[] constituting the crime charged" in contravention of R. 3:7-3(a). However, the identity of the victim is not an element of attempted murder and does not alter defendant's penal exposure. See State v. Greene, 46 N.J. Super. 120, 122 (App.

29

Div. 1957) (explaining that an indictment charging possession of a weapon with intent to use it unlawfully against another "is not fatally defective if it fails to name or otherwise describe" the identity of the intended victim); <u>see also</u> N.J.S.A. 2C:11-3(a) (providing "criminal homicide constitutes murder" when the actor "purposely causes death or serious bodily injury resulting in death," or "knowingly causes death or serious bodily injury resulting in death"); N.J.S.A. 2C:5-1(a) (providing a person is guilty of an attempt to commit a crime if he or she purposely engages in specified conduct).

Defendant contends that the failure to identify a victim made it impossible for him to interview witnesses, identify an alibi witness, or pursue a third-party guilt defense because he did not know "whether he had a connection with the victim." However, the indictment specified the crime charged, the date of the offense, and the general location where the offense occurred. For the first time on appeal, defendant also argues that the indictment was overly vague because it listed the date of the offense as being "[o]n or about the 14th day of October, 2019."

However, as we explained in <u>Jeannotte-Rodriguez</u>:

> [I]t has traditionally been the rule that "time and place have been viewed as not requiring great specificity," as they typically are not elements of the crime; "[t]hus, the time allegation can refer to the event as having occurred

'on or about' a certain date and, within reasonable limits, proof of a date before or after that specified will be sufficient, provided it is within the statute of limitations."

[469 N.J. Super. at 103-04 (second alteration in original) (quoting 5 Criminal Procedure, § 19.3(c)).].

Notwithstanding the omission of the victim's identity, the indictment satisfies the requisite criteria to sustain its validity. There was no prejudice to defendant, lack of notice of the charges against him, or risk of substitution by a trial jury of an offense that the grand jury neither considered nor charged. See State v. Dorn, 233 N.J. 81, 94 (2018) ("[I]n determining the sufficiency of an indictment under the New Jersey Constitution, '[t]he fundamental inquiry is whether the indictment substantially misleads or misinforms the accused as to the crime charged." (second alteration in original) (quoting State v. Wein, 80 N.J. 491, 497 (1979))).

## III.

In Point III, defendant contends that he is entitled to resentencing because the judge "based the aggravating factors on an incorrect recitation of [defendant's] criminal history and because [the judge] failed to find or address three amply supported mitigating factors." Specifically, according to defendant, the judge "relied upon an inflated version of [defendant's] criminal history to

find aggravating factors three, six, and nine, failed to recognize the excessive hardship that [defendant] and his family would experience from [defendant's] imprisonment, and wrongly overlooked evidence showing that [defendant's] conduct was provoked and partially excused." Defendant posits that without the errors, he would have received the minimum five-year NERA sentence, instead of the six-year NERA sentence imposed. Additionally, defendant asserts the judge "erred in imposing a[] $100 Victim of Crime Compensation Board (VCC[O]) assessment." The State does not oppose "a remand to clarify the [judge's] basis for finding aggravating factors three, six and nine and to impose the proper VCCO penalty."

"When sentencing a defendant, a court must identify and balance the aggravating and mitigating factors pursuant to N.J.S.A. 2C:44-1(a) and (b) and explain the factual basis underpinning its findings." State v. Morente-Dubon, 474 N.J. Super. 197, 208 (App. Div. 2022). In our review of a sentence, we "consider whether the trial court has made findings of fact that are grounded in competent, reasonably credible evidence and whether 'the factfinder [has] appl[ied] correct legal principles in exercising its discretion.'" State v. Blackmon, 202 N.J. 283, 297 (2010) (alterations in original) (quoting State v. Roth, 95 N.J. 334, 363 (1984)).

We "may . . . remand for resentencing if the trial court considers an aggravating factor that is inappropriate to a particular defendant or to the offense at issue." State v. Fuentes, 217 N.J. 57, 70 (2014). Even "[s]entences imposed upon . . . defendants [who enter negotiated guilty pleas] must still be within the sentencing guidelines, and the aggravating and mitigating factors found must still have support in the record." State v. Sainz, 107 N.J. 283, 292 (1987); accord State v. Case, 220 N.J. 49, 64 (2014) ("The finding of any factor must be supported by competent, credible evidence in the record.").

Here, based on defendant's "character and attitude," as well as a prior criminal history "resulting in four indictable convictions," the judge found aggravating factors three, N.J.S.A. 2C:44-1(a)(3) ("risk [of] . . . another offense"); six, N.J.S.A. 2C:44-1(a)(6) ("extent of . . . prior criminal record and . . . seriousness of the offenses"); and nine, N.J.S.A. 2C:44-1(a)(9) ("need for deter[ence]"). The judge reviewed the proposed mitigating factors argued by defense counsel and determined the record did not support mitigating factor three, N.J.S.A. 2C:44-1(b)(3) ("defendant acted under a strong provocation"), or four, N.J.S.A. 2C:44-1(b)(4) ("substantial grounds tending to excuse or justify . . . though failing to establish a defense"). Defense counsel did not argue that mitigating factor eleven applied, N.J.S.A. 2C:44-1(b)(11) ("imprisonment . . .

would entail excessive hardship" to defendant or dependents).  Instead, counsel acknowledged that defendant's circumstances were "no different than any other defendant . . . in the jail."

Contrary to defendant's assertion, the judge expressly addressed and rejected the mitigating factors advanced by defense counsel.  See Fuentes, 217 N.J. at 73 ("'[A]lthough our case law does not require that the trial courts explicitly reject every mitigating factor argued to the court,' such a practice is encouraged, as it 'not only ensures consideration of every factor but also demonstrates to defendants and the public that all arguments have been evaluated fairly.'" (quoting State v. Bieniek, 200 N.J. 601, 609 (2010))).

Nevertheless, we vacate the sentence and remand for resentencing because, as the parties agree, the judge mistakenly stated that defendant had four prior indictable convictions, when, in reality, defendant only had one.  Because the judge relied heavily on defendant's prior criminal history in identifying the aggravating factors, it is not clear on this record whether the judge's application of the aggravating factors was based on "competent, credible evidence in the record."  Case, 220 N.J. at 64.

In addition, the judge erred in imposing a $100 VCCO penalty.  Under N.J.S.A.  2C:43-3.1(a)(2)(a), "any person convicted of . . . any crime not

resulting in the injury or death of any other person shall be assessed $50 for each offense or crime for which the person was convicted."  The parties do not dispute that the shooting underlying defendant's conviction for second-degree aggravated assault did not result in any injuries.

We affirm the conviction.  We vacate the sentence and remand for resentencing.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1064-21